# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| Joshua Palczynsky & Alfredo Montes, individually and on behalf of all those similarly situated<br>Plaintiffs, | §<br>§<br>§<br>§<br>§ | |
| v. | §<br>§ | CA No: _____ |
| Oil Patch Group, Inc.<br>Defendant | §<br>§<br>§<br>§<br>§<br>§ | Class and Collective Action |

## PLAINTIFFS' ORIGINAL CLASS/COLLECTIVE ACTION COMPLAINT

Joshua Palczynsky ("Palczynsky") and Alfredo Montes ("Montes"), each a "**Plaintiff**" and collectively "**Plaintiffs**", individually and on behalf of all other non-exempt Flowback Operators currently and formerly employed by Oil Patch Group, Inc. ("OPG" or "Defendant") each of whom are similarly situated, bring this Fair Labor Standards Act ("**FLSA**") and this New Mexico Minimum Wage Act ("**NMMWA**"), N.M. Stat. Ann. § 50-4-19, *et seq*. suit against Defendant and show as follows:

1. NATURE OF SUIT

    1.1. The Department of Labor states that the misclassification of employees as independent contractors presents one of the most serious problems facing affected workers, employers and the entire economy. Misclassified employees often are denied access to critical benefits and protections to which they are entitled, such as the

---

minimum wage, overtime compensation, family and medical leave, unemployment insurance, and safe workplaces. Employee misclassification generates substantial losses to the federal government and state governments in the form of lower tax revenues, as well as to state unemployment insurance and workers' compensation funds. It hurts taxpayers and undermines the economy.

1.2. The FLSA was passed by Congress in 1938 as remedial legislation intended to benefit and protect workers. *See Barrentine v. Ark.-Best Freight Sys., Inc.,* 450 U.S. 728, 739 (1981); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). One of the primary purposes of the FLSA is to protect workers from "substandard wages and oppressive working hours." *Barrentine*, 450 U.S. at 739; *see* 29 U.S.C. § 202(a), (b) (stating Congress' intent to eliminate substandard labor conditions). "[T]he FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from the evil of 'overwork' as well as 'underpay.'" *Barrentine*, ¶450 U.S. at 739 (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt))). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling*

*v. Helmerich & Payne*, 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207 (a)).

1.3. Defendant failed to pay Plaintiffs and the Class Members in accordance with the FLSA or the NMMWA. Specifically, Plaintiffs and the Class Members were paid as independent contractors instead of as employees. As a result, Defendant failed to pay Plaintiffs and the Class Members at time and one half their regular rate of pay for hours worked in a workweek in excess of forty hours.

## 2. PARTIES

2.1. Alfredo Montes is an individual who was employed by Defendant within the meaning of the FLSA within the three-year period preceding the filing of this Complaint. Montes's consent to be a party plaintiff is being filed as an Exhibit to this Complaint.

2.2. Joshua Palczynsky is an individual who was employed by Defendant within the meaning of the FLSA within the three-year period preceding the filing of this Complaint. Palczynsky's consent to be a party plaintiff is being filed as an Exhibit to this Complaint.

2.3. Defendant Oil Patch Group, Inc. is a Delaware corporation doing business in New Mexico. It has an office in this District located at 902 Tipton, Hobbs, NM 88240. It can be served by serving CT Corporation at 206 S. Coronado Ave., Espanola, NM 87532.

2.4. Defendant has/had Flowback Operators working in this district and in the oil fields in various states including Texas, New Mexico, Louisiana and North Dakota.

2.5. The "**Class Members**" are Defendant's current and former employees who, within the actionable time period, were employed as Flowback Operators at any location in the United States but who were paid as independent contractors.  The Class Members were known as "Flowback Operators" (collectively, "Flowback Operators") but this collective action is intended to cover all employees who performed flowback operational services and who were paid as independent contractors, regardless of actual job title. The Flowback Operators were and are paid a day-rate and not compensated at the statutory rate of one and one-half times their regular rate of pay for all hours worked more than forty (40) in a workweek.

3.  JURISDICTION AND VENUE

3.1. Venue of this action is proper in this district because the events giving rise to the cause of action alleged herein occurred in this judicial district and Defendant maintains one or more regional offices in this District. Venue exists in the judicial district pursuant to 28 U.S.C. § 1391.

3.2. Defendant carries on substantial business in the District of New Mexico, has offices in this District and has sufficient minimum contacts with this state to be subject to this Court's jurisdiction.

3.3. Further, the acts and omissions that form the basis of the lawsuit (i.e., Defendant's failure to pay overtime compensation) occurred within this District.

3.4. This Court has jurisdiction over this case pursuant to the district court's federal question jurisdiction as set forth in 28 U.S.C. § 1331. Specifically, this case is brought pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*, as amended.

3.5. Plaintiffs request that this Court exercise its supplemental jurisdiction over the New Mexico state law claims. 28 U.S.C. § 1367.

## 4. COVERAGE

4.1. At all material times, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs.

4.2.  At all material times, Defendant has acted, directly or indirectly, in the interest of an employer with respect to the Class Members.

4.3. At all material times, Defendant has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

4.4. At all material times, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

4.5. At all material times, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling,

selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated). The Flowback Operators worked on equipment that had traveled in interstate commerce. Oil field equipment and supplies used by the Flowback Operators were manufactured out of state and shipped in state for consumption and use. The drilling rigs and facilities on which the Flowback Operators worked are assembled with equipment from out of state and produce oil and gas that flows in interstate commerce. The Flowback Operators used the instrumentalities of interstate commerce in the performance of their duties.

4.6. Two or more of Defendant's employees, engage in commerce by using equipment that has traveled in interstate commerce. By way of example and not by limitation, Defendant's employees used/use:

4.6.1. Oil field equipment that has been manufactured and shipped across state lines;

4.6.2. Computers and telecommunications equipment that has been manufactured and shipped across state lines;

4.6.3. Office equipment, such as copiers, that has been manufactured and shipped across state lines;

4.6.4.  The interstate telephone systems, landline and cellular, to recruit and employ individuals for operational positions;

4.6.5.  The United States postal system to send mail across state lines; and

4.6.6.   The interstate banking systems to pay Defendant's employees.

4.7. At all times hereinafter mentioned, Plaintiffs were employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206 - 07.

4.8. During the time they provided services to Defendant as Flowback Operators, Plaintiff and the Class Members were "employees" of Defendant as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(c).

4.9. During the time they provided services to Defendant as Flowback Operators, Defendant was Plaintiffs' and the Class Members' "employer" as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(b).

## 5. FACTUAL ALLEGATIONS

5.1.  Defendant provides production services and technology and downhole services to the oil field industry.

5.2.  To provide services to many of its customers, Defendant retains workers (including Flowback Operators) to perform services on its behalf.

5.3.  Defendant determines the terms and conditions of employment of the workers.

5.4. Defendant hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

5.5. Even if their job titles and precise job duties differed, Defendant subjected Plaintiffs and the other Flowback Operators like them to the same or similar illegal pay practices for similar work.

5.6. Defendant classified the Flowback Operators as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

5.7. Defendant directed Plaintiffs to work 12 (or more) hours a day for as many as 7 days in a week.

5.8. The work Plaintiffs performed was an essential part of Defendant's core business.

5.9. During Plaintiffs' employment with Defendant and while they were classified as independent contractors, Defendant exercised control over all aspects of their job.

5.10. Defendant did not require any substantial investment by Plaintiffs for them to perform the work required of them.

5.11. Defendant controlled Plaintiffs' opportunity for profit and loss by dictating the days and hours they worked and the rate they were paid.

5.12. Plaintiffs were not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform their job duties.

5.13. Plaintiffs worked exclusively for Defendant as independent contractors and were prevented by Defendant from working for other oil field service firms.

5.14. While working for Defendant, Defendant controlled all the significant or meaningful aspects of the job duties performed by Plaintiffs.

5.15. Defendant exercised control over the hours and locations Plaintiffs worked, tools and equipment used, and rates of pay received.

5.16. Plaintiffs were not required to make a real investment to perform their job.

5.17. More often than not, Plaintiffs utilized equipment provided by Defendant to perform their job duties.

5.18. Plaintiffs did not provide the significant equipment they worked with on a daily basis. Defendant made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Plaintiffs worked.

5.19. Plaintiffs did not incur operating expenses like rent, payroll, marketing, and insurance.

5.20. Plaintiffs were economically dependent on Defendant during their employment with Defendant.

5.21. Defendant set Plaintiffs' rates of pay, work schedule, and effectively prevented (or outright prohibited) them from working other jobs for other companies while they were working on jobs for Defendant.

5.22. Defendant directly determined Plaintiffs' opportunity for profit and loss.

5.23. Plaintiffs' earning opportunity was based on the number of days Defendant scheduled them to work.

5.24. Very little skill, training, or initiative was required of Plaintiffs to perform their job duties.

5.25. Indeed, the daily and weekly activities of the Flowback Operators were routine and largely governed by standardized plans, procedures, and checklists created by Defendant.

5.26. Virtually every job function was pre-determined by Defendant, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

5.27. The Flowback Operators were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Defendant's policies, procedures, and directives.

5.28. Plaintiffs performed routine job duties that were largely dictated by Defendant.

5.29. Plaintiffs were not employed by Defendant on a project-by-project basis.

5.30. In fact, while Plaintiffs were classified as independent contractors, they were regularly on call for Defendant and were expected to drop everything and work whenever needed.

5.31. All of the Flowback Operators working for, or on behalf of Defendant, perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person.

5.32. All of the Flowback Operators working for, or on behalf of Defendant, also worked similar hours and were denied overtime as a result of the same illegal pay practice.

5.33. All of the Flowback Operators working for, or on behalf of Defendant, all worked in excess of 40 hours each week and were often scheduled to work 12 hour shifts for weeks at a time.

5.34. Instead of paying them overtime, Defendant paid Plaintiffs and the other Flowback Operators like them a day rate and misclassified them as independent contractors.

5.35. Defendant denied Plaintiffs and the other Flowback Operators like them overtime for hours worked in excess of 40 hours in a single workweek.

5.36. Plaintiffs and the other Flowback Operators like them were never paid on a salary basis. They never received any guaranteed weekly compensation from Defendant irrespective of days worked (i.e., the only compensation they received was the day rate they were assigned for all hours worked in a single day).

5.37. Defendant's policy of classifying Plaintiffs and the other Flowback Operators like them as independent contractors and failing to pay them overtime, violates the FLSA and the NMMWA because these workers are, for all purposes, non-exempt workers.

5.38. It is undisputed that the Flowback Operators are working long hours in the field.

5.39. Because Plaintiffs and the other Flowback Operators like them were misclassified as independent contractors by Defendant, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

5.40. Defendant's day rate system violates the FLSA and the NMMWA because Plaintiffs and the other Flowback Operators like them did not receive any overtime pay for hours worked over 40 hours each week.

5.41. Defendant was aware that Plaintiffs and the Class Members were working more than 40 hours a week because Plaintiffs and the Class Members were scheduled to work twelve-hour shifts.

5.42. Defendant has employed and continues to employee numerous other individuals who performed and continue to perform the same or similar duties under the same or similar pay policies as Plaintiffs. These other individuals are the Class Members.

## 6. COLLECTIVE AND CLASS ACTIONS ALLEGATIONS

6.1. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

6.2. Plaintiffs bring this action as a FED. R. CIV. P. 23 class action, on behalf of himself and on behalf of a Class for which Plaintiffs seek certification. Pending any modifications necessitated by discovery, Plaintiffs preliminarily define this Class as follows:

**All Flowback Operators providing services to Defendant who were paid a day-rate and no overtime and who worked more than 40 hours in one or more individual workweeks in the state of New Mexico.**

6.3. This action is properly brought as a class action for the following reasons:

6.3.1. The Class is so numerous that joinder of all Class Members is impracticable. Plaintiff is informed and believes that the number of Class Members exceeds forty;

6.3.2. Numerous questions of law and fact regarding the liability of Defendant are common to the Class and predominate over any individual issues which may exist;

6.3.3. The claims asserted by Plaintiffs are typical of the claims of Class Members and the Class is readily ascertainable from Defendant's own records. A class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

6.3.4. Plaintiffs will fairly and adequately protect the interests of Class Members. The interests of Class Members are coincident with, and not antagonistic to, those of Plaintiffs. Furthermore, Plaintiffs are represented by experienced class action counsel.

6.4. Plaintiffs also seeks certification of an FLSA "opt-in" collective action pursuant to 29 U.S.C. §216(b) for all claims asserted by Plaintiffs because their claims are nearly identical to those of other Collective Members. Plaintiff and Collective Members are

similarly situated, have substantially similar or identical job requirements and pay provisions, and were subjected to Defendant's common practice, policy or plan regarding paying Flowback Operators as independent contractors.

6.5. Pending any modifications necessitated by discovery, Plaintiffs preliminarily define this Collective as follows:

**All Flowback Operators providing services to Defendant who were paid a day-rate and no overtime and who worked more than 40 hours in one or more individual workweeks beginning three years prior to the date of the filing of this lawsuit.**

6.6. Plaintiffs' experiences are typical of the experiences of the putative Class/Collective Members.

6.7. The specific job titles or precise job locations of the various putative Class/Collective Members do not prevent class or collective treatment.

## 7. FIRST CAUSE OF ACTION - FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

7.1. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

7.2. Plaintiffs and the Collective Members were, and are, entitled to be paid at the statutory rate of one and one-half times their regular rate of pay for those hours worked in excess of forty (40) hours in a workweek.

7.3. During the relevant period, Defendant violated § 207 of the FLSA by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, as aforesaid, for one or more workweeks

without compensating such employees for their work at a rate of at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

7.4. To date, Defendant continues to fail to pay the Plaintiffs and the Collective Members their FLSA mandated overtime pay.

7.5. Defendant's actions in this regard were/are willful and/or showed/show reckless disregard for the provisions of the FLSA as evidenced by their continued failure to compensate Plaintiffs and the Collective Members at the statutory rate of one and one-half times their regular rate of pay for the hours worked in excess of forty (40) hours in a workweek when they knew, or should have known, such was, and is due.

7.6. Due to the intentional, willful, and unlawful acts of Defendant, Plaintiffs and the Collective Members suffered and continue to suffer damages and lost compensation for time worked over forty (40) hours in a workweek, plus liquidated damages.

7.7. Plaintiffs are entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

8. SECOND CAUSE OF ACTION – CLASS ACTION CAUSE OF ACTION: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE NEW MEXICO MINIMUM WAGE ACT ("NMMWA"), N.M. STAT. ANN. § 50-4-19, ET SEQ.

8.1. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

8.2. During their employment, Plaintiffs and the Class Members were "employees" of Defendant as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(c).

8.3. During their employment, Defendant was Plaintiffs' and the Class Members' "employer" as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(b).

8.4. This count arises from Defendant's violations of the NMMWA by failing to pay overtime to Plaintiffs and the Class Members when they worked over 40 hours in individual workweeks.

8.5. Defendant classified Plaintiffs and the Class Members as exempt from the overtime provisions of the NMMWA.

8.6. Plaintiff and the Class Members were not exempt from the overtime provisions of the NMMWA.

8.7. Plaintiffs and the Class Members were regularly directed to work by Defendant, and did work, over 40 hours in individual workweeks.

8.8. As a result of the foregoing conduct, as alleged, Defendant has violated, and continue to violate the NMMWA by failing to pay Plaintiff and the Class Members overtime at one and one-half times their regular rate of pay when they worked over 40 hours in individual workweeks.

8.9. Defendant's actions are/were part of a "continuing course of conduct" (N.M. Stat. Ann. § 50-4-32) for which Plaintiffs and the Class Members seek recovery.

8.10. As a result, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## 9. DOCUMENT PRESERVATION

9.1. As part of discovery, Plaintiffs will be requesting certain documents and information from Defendant. Please note the document preservation instructions attached hereto.

## 10. REQUEST FOR RELIEF

10.1. WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in their favor and Class Members/Collective Members and against Defendant as follows:

10.1.1. Determining that the New Mexico state law claims are properly maintained as a class action under FRCP 23, certifying Plaintiffs as the class representatives, and appointing Plaintiffs' counsel as counsel for the Class Members;

10.1.2. Determining that the FLSA claims are properly maintained as a collective action under the FLSA, certifying Plaintiffs as the collective representatives, and appointing Plaintiffs' counsel as counsel for the Collective Members;

10.1.3. Ordering prompt notice of this litigation to all potential Class/Collective Members;

10.1.4. Awarding Plaintiffs and Class/Collective Members declaratory and/or injunctive relief as permitted by law or equity;

10.1.5.  Awarding Plaintiffs and Class/Collective Members their compensatory damages, service awards, attorneys' fees and litigation expenses as provided by law;

10.1.6.  Awarding Plaintiffs and the Class Members all damages and penalties available under the NMMWA that accrued after Defendant initiated its illegal overtime misclassification policy;

10.1.7.  Awarding Plaintiffs and the Class Members an amount equal to twice their unpaid wages as liquidated damages under the NMMWA;

10.1.8.  Awarding Plaintiffs and Class/Collective Members their pre-judgment, post-judgment and moratory interest as provided by law;

10.1.9.  Awarding Plaintiffs and Class/Collective Members liquidated damages and/or statutory penalties/interest as provided by law; and

10.1.10.  Awarding Plaintiffs and Class/Collective Members such other and further relief as the Court deems just and proper.

By: _____

Melissa Moore
Texas Bar No. 24013189
MOORE & ASSOCIATES
440 Louisiana, Ste. 1110
Houston, Texas 77002
(713) 222-6775 (Telephone)
(713) 222-6739 (Facsimile)
melissa@mooreandassociates.net


OF COUNSEL:

Curt Hesse
State Bar No.24065414
MOORE & ASSOCIATES
440 Louisiana, Ste. 1110
Houston, Texas 77002
(713) 222-6775 (Telephone)
(713) 222-6739 (Facsimile)
curt@mooreandassociates.net

Chris R. Miltenberger
Texas Bar No. 14171200
THE LAW OFFICE OF CHRIS R.
MILTENBERGER,    PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
(817) 416-5060 (Telephone)
(817) 416-5062 (Facsimile)
chris@crmlawpratice.com

Pro     Hac     Vice     Application
Forthcoming

**ATTORNEYS-IN-CHARGE FOR
PLAINTIFFS**

## DOCUMENT PRESERVATION INSTRUCTIONS

Plaintiffs will be requesting electronic and other documentary evidence during discovery in this matter. This evidence will be of critical importance and Plaintiffs want to ensure that the types of documentary and electronic evidence that will be requested the course of discovery are preserved.

As you may be aware, "[w]hen a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents and of the possible consequences of failing to do so." Standard 10, Preservation of Documents, ABA Civil Discovery Standards (Aug. 2004). This duty "applies to information stored in an electronic medium or format..." Id. at Standard 29.

- Various kinds of electronic and hard-copy data will be important in this lawsuit. The data Plaintiffs anticipate will be relevant includes, but is not limited to, the following:

- The portions of any database or system maintained or used that contains time stamps or other data, including timesheets and telephone records, relating to the hours worked by Plaintiffs and putative opt-in plaintiffs and/or class members as well as their pay;

- Emails and other electronic and hard-copy documents pertaining to Defendant's decision to not pay the overtime premium.

- Emails and other electronic and hard-copy documents pertaining to Defendant's reliance on department of labor authority when deciding not to pay the overtime premium.

- Emails and other electronic and hard-copy documents pertaining to any audit or investigation performed by the department of labor;

- Emails and other electronic and hard-copy documents pertaining to the job duties performed by Defendant's employees, including Plaintiffs;

- Emails and other electronic and hard-copy documents pertaining to the hours worked by Defendant's employees, including Plaintiffs;

- Emails sent and received by Plaintiffs, putative opt-in plaintiffs or class members, and their managers/supervisors;

- Emails and other electronic or hard-copy documents pertaining to Defendant's compliance with the Fair Labor Standards Act and/or state laws; and

- Emails and other electronic or hard-copy documents pertaining to Plaintiffs and all other current or former employees.

This data, including all associated metadata, must be preserved. Therefore, Plaintiffs request that Defendant performs offline backups of any databases which contain information of the types identified above. Plaintiffs also request that Defendant performs offline backups of all current Microsoft Exchange (or other email) databases to external hard drives, preserving their native format. These backups should be done routinely from this point forward.

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Therefore, Plaintiffs request that Defendant take every reasonable step to preserve this information until the final resolution of this matter, and discontinue all data destruction activities, including but not limited to, backup tape recycling policies, any automatic email deletion functions, and refrain from disposing of any relevant hardware or data storage.