IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA PALCZYNSKY, ET AL.,
*individually and on behalf of all class members
and those similarly situated*,

      Plaintiffs,

v.                                                                                                                                No. 2:21-cv-01125-DHU-KRS

OIL PATCH GROUP, INC.

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on third party RUSCO Operating, LLC's ("RUSCO") Motion to Intervene and Supporting Brief. Doc. 18. Named Plaintiff Joshua Palczynsky and Opt-in Plaintiffs Thomas Miller and Johnny Smith ("Plaintiffs") allege that Defendant Oil Patch Group, Inc., violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1) and the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50–4–22 ("MWA"), by failing to compensate oilfield workers for hours worked overtime. In the instant motion, RUSCO seeks to intervene in this litigation as the alleged "party with whom the … Plaintiffs had actual agreements concerning their classification as independent contractors." Mot. at 1. If permitted to intervene, RUSCO intends to compel the Plaintiffs into arbitration or, alternatively, for each Plaintiff to litigate his or her claims individually. The Court, having considered RUSCO's motion, briefs, relevant law, and being fully advised of the premises, concludes that RUSCO'S motion to intervene will be **GRANTED** but that its motion for attorneys' fees will be **DENIED**.

## BACKGROUND

The Court begins by describing RUSCO's business operations and its alleged role in this case. According to a declaration submitted by RUSCO'S general counsel, Olivia Howe, RUSCO operates an app.[1] *See* Howe Decl., ¶ 5, Doc. 18-1. The app is used oil-and-gas workers, including drilling fluids engineers, coiled tubing completions consultants, and health and safety experts, to "market their services to oil and gas operators." *Id*. Those operators in turn use the app to "search for and connect with" oil and gas workers for work on particular projects. *Id*. According to RUSCO, the oil and gas industry is characterized by "boom-and-bust cycles" requiring operators to "scale up and down very quickly." Doc. 18 at 3. Operators therefore use RUSCO's app to find workers "on an as-needed and where-needed basis." Howe Decl. at ¶ 6. RUSCO also provides administrative services for workers, such as invoicing, payment processing, insurance, and record-keeping. *See id.* at ¶ 7. Millions of dollars have been invested to develop the app. *See id*. RUSCO allegedly pays workers based on an invoice submitted by the worker, minus a percentage or "split" compensating RUSCO for its services. *Id*. at ¶ 8. Operators then allegedly pay RUSCO the balance invoiced. *See id*.

According to RUSCO, app-users, including Plaintiffs, have electronically executed a document titled "Agreement Between Independent Professional & Workrise for Use of Workrise Service" (the "Agreement"). *Id*. at ¶ 8. RUSCO submitted Agreements in the record allegedly associated with each Plaintiff. *See* Docs. 18-4, 18-5, 18-6. Each Agreement stated that by signing the Agreement, the worker "assert[ed] that you are an independent professional and entrepreneur who wishes to: (a) digitize and modernize your business; (b) be introduced to new clients by Workrise; and (c) engage Workrise for its Service to accomplish these entrepreneurial goals."

---

[1] RUSCO is owned by Workrise Technologies Inc., which was formerly known as RigUp, Inc. *See id*. at ¶ 2.

Doc. 18-4 at 1; *see also* Docs. 18-5 at 1; 18-6 at 1. The Agreement applying to Plaintiff Palczynsky contained a "Dispute Resolution" clause providing in relevant part that:

> [t]he Parties affirmatively agree that every claim, controversy, allegation, or dispute arising out of or relating in any way to the Project, the Project Details, or this Agreement, both past and future, including without limitation before the Project, after completion of the Project, and after abandonment of the Project, shall be resolved by binding arbitration administered by one arbitrator through the American Arbitration Association.

Doc. 18-4 at 4-5.

RUSCO app-users also allegedly must agree to a document called "Terms of Service" ("Terms"). *See* Howe Decl. at ¶ 10. The 2019 Terms that allegedly governed Plaintiff Miller's work stated in pertinent part that:

> [Y]ou and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration …. This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statue, fraud, misrepresentation, or any other legal theory, regardless of whether a claim arises during or after the termination of these Terms.

Doc. 18-7 at 3; *see also* Howe Decl. at ¶ 10. The updated 2021 Terms that allegedly governed Plaintiffs Palczynsky's and Smith's provided that:

> [Y]ou and Workrise agree to … waive your and Workrise's respective rights to have any and all Disputes arising from or related to these Terms, or the Services resolved in a court …. This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, regardless of whether a claim arises before during, or after the termination of these Terms.

Doc. 18-8 at 5.

On November 23, 2021, Plaintiffs filed a lawsuit in this Court against Defendant Oil Patch Group, Inc. ("OPG"), but not RUSCO, for violating federal and state overtime laws. *See* Doc. 1. Around March 3, 2022, RUSCO learned from OPG's counsel about the current lawsuit before the Court. *See* Doc. 18-1. During this same period, counsel for RUSCO asked counsel for

3

Plaintiffs to voluntarily withdraw the Plaintiffs' claims and pursue them in arbitration based on this Court's decision in *Martin, v. Tap Rock Resources, LLC*, No. 2:20-CV-170-WJ-CEG, 2022 WL 278874, at *1 (D.N.M. Jan. 31, 2022) ("*Tap Rock*"), which held that RUSCO, the same party now before the Court, had a sufficient interest in its arbitration agreements and designation of workers as independent contractors to justify RUSCO's intervention in an overtime case. Plaintiffs' counsel refused, noting that *Tap Rock* was not precedential. On March 28, 2022, RUSCO now filed the instant motion to intervene as of right, or alternatively, as of the Court's discretion. RUSCO also moved to recover attorneys' fees. The Court addresses these requests below, beginning with RUSCO's motion to intervene as of right.

## DISCUSSION

### A. Intervention as of Right

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties. *Kane Cnty., Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019). The Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (citation omitted). A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

#### 1. Timeliness

"The timeliness of a motion to intervene is determined in light of all of the circumstances." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th

Cir. 2010) (citation omitted). A court considers three non-exclusive but "particularly important" factors: "(1) the length of time since the [movant] knew of [its] interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the [movant]." *Id.* (brackets omitted).

RUSCO moved to intervene about four months after the complaint was filed. RUSCO argues that its motion is timely because no significant litigation events have occurred. Plaintiffs' response brief does not dispute Rule 24(a)(2)'s timeliness element or otherwise address or make any arguments that RUSCO's motion is untimely. Given the lack of argument from Plaintiff concerning the timeliness prong, the Court will assume that RUSCO timely filed its motion to intervene. *See Bock v. Salt Creek Midstream LLC*, No. CV 19-1163 WJ/GJF, 2020 WL 3989646, at *3 (D.N.M. July 15, 2020), *report and recommendation adopted*, No. CV 19-1163 WJ/GJF, 2020 WL 5640669 (D.N.M. Sept. 22, 2020) (holding that oilfield staffing company's motion to intervene was timely as a matter of law where the employees' response brief was "silent on the topic" of timeliness, the employees did not dispute timeliness at oral argument, and the intervenor filed its motion three months after the lawsuit was filed). Given Plaintiffs' lack of argument on the timeliness issue, the Court will assume that RUSCO'S motion was timely.

### 2. Interest in the Subject of the Lawsuit and Potential Impairment of that Interest

The next two elements that RUSCO must establish are that it has (1) an interest relating to the property or transaction that is the subject of the action and (2) the potential impairment of that interest. *See Kane Cnty.*, 928 F.3d at 889. "[T]he question of impairment is not separate from the question of existence of an interest." *Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n,* 578 F.2d 1341, 1345 (10th Cir. 1978). "Whether ... applicant[s] ha[ve] an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *Zinke*, 877 F.3d at 1165 (citation omitted). "A protectable interest is one that

would be impeded by the disposition of the action." (citation and internal quotation marks omitted). "The movant's claimed interest is measured in terms of its relationship to the property or transaction that is the subject of the action, not in terms of the particular issue before the district court." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (citing *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001)). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013).

The parties' dispute appears to center primarily on whether RUSCO has an interest that is potentially impaired. RUSCO identifies the following two interests at stake: "(1) defending its classification of the … Plaintiffs as independent contractors; and (2) protecting its business model and pay structure." Doc. 18 at 7.[2] Concerning the former interest, the independent-contractor status, RUSCO states that its designation of workers as independent contractors is important to its business model as a whole because independent contractors are important in the boom-bust cycles of the oil-and-gas industry. For intervention purposes, RUSCO claims the Plaintiffs' classification as independent contractors "goes to the heart of their claims, and that determination is largely informed by their agreements *with RUSCO*." *Id*. (emphasis in original; bold font omitted).

As for its second alleged interest at stake, RUSCO's business interests, RUSCO claims that millions of dollars have gone into the app's development and that its "business model, pay

---

[2] RUSCO also argues that it has an important interest in defending its arbitration agreement. The Court understands this as a sub-argument of its second stated interest—defending its classification of the Plaintiffs as independent contractors.

structure, and classification of workers as independent contractors … is a legitimate interest that could be adversely impacted by the litigation." *Id.* at 8. Part of its business model is arbitrating disputes and RUSCO therefore has an interest in enforcing its arbitration agreements and class action waivers. Unlike litigation, arbitration is private and "FLSA litigation involves analysis of the inner workings of pay practices and methodology, project assignments, benefits, and other issues RUSCO wishes to prevent its competitor from accessing," according to RUSCO. Finally, RUSCO asserts this Court and others have permitted third party staffing companies to intervene as of right when, as here, the employee sues the employer without naming the staffing company.

In response, Plaintiffs argue that RUSCO was never sued, so its liability is not at stake. Plaintiffs quote from the Supreme Court's statement that "[a]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." Doc. 28 at 4 (quoting *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017)). Plaintiffs argue that RUSCO lacks standing to sue because it has not suffered a redressable current or future injury traceable to "Palczynsky, OPG or any of the putative plaintiffs." Doc. 28 at 5. Plaintiffs assert that the "Court must look past the immediate arbitration issue and analyze RUSCO's relationship to the property or transaction made the basis of this lawsuit." *Id*. at 4. The "transaction" that is the basis of this lawsuit, Plaintiffs say, is unpaid wages, not the arbitration issue, so RUSCO's intent to enforce its arbitration agreement is insufficient to confer standing.

Having considered the parties' arguments, the Court concludes that RUSCO's two identified interests—defending its classification of the workers as independent contractors, and protecting its business model and pay structure, including its interest in enforcing its arbitration agreement—are sufficiently at stake to warrant intervention. In doing so, the Court simply

7

follows its previous holdings, first in *Tap Rock* and then in *Corral*, that these same interests raised by the same party, RUSCO, are "valid, protectable interests" that justify intervention. *Corral v. Concho Res., Inc.*, No. CV 21-0390 KG/SMV, 2022 WL 3716060, at *4 (D.N.M. Aug. 29, 2022) (finding that RUSCO's two asserted primary interests – "enforcing its arbitration agreements and class action waivers" and "defending its 'independent contractor' classification to protect its business model"—are "valid, protectable interests that may be adversely impacted by this case."); *Tap Rock*, 2022 WL 278874, at *4 (same).

As the Court stated in *Corral*, the reason alleged arbitration agreements can give rise to a sufficient interest for RUSCO to intervene is because:

> As a signatory to that [arbitration agreement]—indeed as its sole drafter—[RUSCO] has an interest in pursuing what it views as the benefit of its bargain. Denying [RUSCO] the ability to intervene and—at the very least—make the argument that its [arbitration agreement] be honored by its former employees is a result that Rule 24(a) is designed to protect.

*Corral*, 2022 WL 3716060, at *5. Thus, RUSCO's interest in enforcing its alleged arbitration agreements, particularly given its "minimal burden" to show potential impairment, *Kane Cnty.*, 928 F.3d at 891, and the Tenth Circuit's liberal view toward intervention, *see Zinke*, 877 F.3d at 1164, is sufficient to justify RUSCO's motion to intervene.

RUSCO also has an interest in defending its "independent contractor" classification and business model. Plaintiffs primarily argue that only OPG's liability is at stake, not RUSCO's. The Court first notes that Rule 24(a)(2) "requires only that the applicant for intervention claim an interest *relating to* the property or transaction which is the subject of the action." *Kane Cnty.*, 928 F.3d at 892 (holding that an environmental group had a legally protectable interest in a quiet title dispute even though the group did not own the land in question because the group had a long history of advocating for preservation of the land and the group's preservation goals would be

8

affected by the outcome of the litigation). Thus, contrary to Plaintiffs' arguments, it is not as if RUSCO is a complete stranger to this case. "[I]ntervention may be based on an interest that is contingent upon the outcome of the litigation." *San Juan Cnty.*, 503 F.3d at 1203. To that end, as this Court has stated on highly similar facts involving a motion to intervene filed by RUSCO:

> Whether Plaintiffs agree or not, this lawsuit is every bit the full-scale assault on [RUSCO's] business model as it is on Defendant's. If at the conclusion of this litigation Defendant is found liable, [RUSCO] will face ... the pressure associated with knowing that *its* pay practice and *its* personnel structure were found to have violated federal and/or New Mexico wage-and-hour laws. With threats like that to [RUSCO's] financial security and its business operations model, denying [RUSCO] a podium in this debate is a result once again that Rule 24(a) is designed to prevent.

*Corral*, 2022 WL 3716060, at *6; *see also Tap Rock*, 2022 WL 278874, at *7. The same rationale applies here, and the Court therefore holds that RUSCO's interest in defending its independent contractor classification and business model justify intervention.

Finally, the Court also holds, as it did in *Tap Rock* and *Corral*, that RUSCO has standing to assert these Rule 24 interests. As the Court stated in *Tap Rock*, "[t]he standards for ascertaining RUSCO's 'interest' in the instant lawsuit as well as RUSCO's Article III standing to sue in the same lawsuit are roughly the same." 2022 WL 278874, at *6. Whatever the slight nuances between these standards, the Court reiterates its finding that "RUSCO's interest in enforcing its arbitration agreements, as well as its interest in defending its 'independent contractor' classification and business model, satisfies both standards." *Corral*, 2022 WL 3716060, at *6. RUSCO therefore has standing to raise the Rule 24 interests it now raises.

In summary, RUSCO has carried its "minimal burden" to show potential impairment of interests, thereby warranting intervention as of right. *Kane Cnty.*, 928 F.3d at 891.

### 3. Inadequate Representation by Existing Parties

9

The next element that RUSCO must show is that there would be inadequate representation by the existing parties. *See Kane Cnty.*, 928 F.3d at 889. "This requirement is satisfied where the applicant shows that representation of his interest *may be* inadequate—a 'minimal' showing." *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1072 (10th Cir. 2015) (citation and internal quotation marks omitted). "Thus, the likelihood of a divergence of interest need not be great to satisfy the requirement." *Id.* (internal quotation marks omitted).

RUSCO argues, among other things, that its interests may not be adequately represented by OPG because OPG has not sought to compel arbitration and that even if it had, OPG may not raise the arguments RUSCO would raise or be as motivated to defend RUSCO's business practices. Plaintiffs' response brief does not dispute or otherwise address RUSCO's inadequate representation arguments, and therefore the Court will assume that this factor weighs in RUSCO's favor.

In summary, RUSCO has adequately established its right to intervene under Rule 24(a). Consistent with the Tenth Circuit's liberal approach to intervention and preference for granting of motions to intervene, *see Zinke*, 877 F.3d at 1164, the Court concludes that RUSCO's motion to intervene based on Fed. R. Civ. P. 24(a)(2) will be granted.

> B.   **Permissive Intervention**

In addition, and in the alternative, RUSCO asks the Court to permit RUSCO to intervene under Rule 24(b)(1)(B), which permits the district court, on a timely filed motion to allow anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Given the Court's above ruling that

RUSCO is entitled to intervene as of right under Fed. R. Civ. 24(a), the Court need not address or decide RUSCO'S permissive intervention argument.

        **C.**        **Attorneys' Fees**

RUSCO requests its attorneys' fees in bringing this motion because Plaintiffs allegedly opposed the motion in bad faith given Chief Judge Johnson's ruling in *Tap Rock*, which involved highly similar issues and was decided before RUSCO filed its motion. RUSCO invokes the Court's inherent authority to assess attorneys' fees as fine for bad-faith litigation conduct.

Federal courts have the inherent authority to discipline attorneys who appear before them. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, (1991) (citing *Ex parte Burr,* 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824)). "Article III courts were imbued with an array of 'inherent powers' in performing their case-management function from the moment of their establishment, powers never specifically enumerated in the Constitution or in legislative enactments, yet necessary to the exercise of all other[ ] [enumerated judicial powers]." *United States v. Kouri-Perez*, 187 F.3d 1, 7 (1st Cir. 1999) (citing *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)). "These implicit powers include the judicial authority to sanction counsel for litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of the proceedings." *Kouri-Perez*, 187 F.3d at 1 (citing *Chambers*, 501 U.S. at 43).

In particular, courts may impose monetary penalties as part of this inherent power. *See e.g. United States v. Romero–Lopez,* 661 F.3d 106, 107–08 (1st Cir. 2011) (monetary penalties). In considering what discipline to impose on an attorney, district courts have "an array of options," *Kouri-Perez*, 757 F.2d at 8, and "flexibility to equitably tailor punishments that appropriately fit the conduct." *In re Smothers*, 322 F.3d 438, 442 (6th Cir. 2003). Generally

speaking, district courts should "deploy[] the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes." *Kouri-Perez*, 187 F.3d at 8.

The Court concludes that RUSCO's motion for attorneys' fees is denied because Plaintiffs did not oppose the motion in bad faith. Plaintiffs recognize, correctly, that *Tap Rock* is not binding precedent. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("[a] decision of a federal district judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") Plaintiffs' opposition brief therefore was not brought in bad faith. Hence the rational for sanctions, to discourage "litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of the proceedings," *Kouri-Perez*, 187 F.3d at 1, is not present in this case. Defendant's motion for attorneys' fees is therefore denied.

## Conclusion

For the reasons stated herein, it is therefore ORDERED that RUSCO Operating, LLC's ("RUSCO") Motion to Intervene and Supporting Brief (Doc. 18) is GRANTED in part and DENIED in part. In addition, the caption of this case shall be amended as follows:

[remainder of this page intentionally left blank]

JOSHUA PALCZYNSKY, ET AL.,
*individually and on behalf of all class members and those similarly situated*,

    Plaintiffs,

v.                                                                                                                No. 2:21-cv-01125-DHU-KRS

OIL PATCH GROUP, INC.

    Defendant,

and

RUSCO OPERATING LLC,

    Intervening Defendant.

_____
**HON. DAVID HERRERA URIAS**
United States District Judge