IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA PALCZYNSKY, ET AL.,
*individually and on behalf of all class members
and those similarly situated*,

      Plaintiffs,

      v.                                                                                                     No. 2:21-cv-01125-DHU-KRS

OIL PATCH GROUP, INC.

      Defendant,

RUSCO Operating, LLC,

      Intervenor.

## MEMORANDUM OPINION AND ORDER

      This matter is before the Court on intervenor RUSCO Operating, LLC's ("RUSCO") Motion to Compel Named Plaintiff Joshua Palczynsky and Opt-In Plaintiffs Thomas Miller, Johnny Smith, and Jack Burson to Arbitration, or in the Alternative, to Require Each Plaintiff to Proceed Individually, filed September 22, 2023. Doc. 51. On October 20, 2023, Plaintiffs responded, and RUSCO replied on November 03, 2023. Docs. 62, 54.  The Court held a hearing on the Motion on July 01, 2024, at which counsel for all parties were present. Having considered the parties briefs, the record of the case, the arguments of counsel and applicable law, the Court finds that the Motion to Compel is with merit and shall be **GRANTED**.

## I.
## BACKGROUND

**a. Factual Background**

      The facts of the case have been addressed at length in a previous Memorandum Opinion and Order (Doc. 44) and by the parties. Therefore, the Court need not restate at length the same here. In summary, RUSCO is a business which operates an online platform (an "app"). *See*

1

Declaration of Olivia Howe ("Howe Decl.") (attached as Exhibit 1 to RUSCO's Motion to Compel, Doc. 51). The app is used by oil-and-gas workers, including drilling fluids engineers, coiled tubing completions consultants, and health and safety experts, to "market their services to oil and gas operators." *Id.* Those operators in turn use the app to "search for and connect with" oil-and-gas workers for work on projects. *Id.* Defendant Oil Patch Group, Inc. ("Defendant") is one such operator. *Id.* It is through the app that Defendant hired Plaintiff, Joshua Palczynsky and Opt-in Plaintiffs Thomas Miller, Johnny Smith, and Jack Burson (collectively, the "Plaintiffs").

RUSCO also provides administrative services for workers, such as invoicing, payment processing, insurance, and record-keeping. *See id.* at ¶ 7. RUSCO facilitated the Plaintiffs' invoicing and payment for the work they performed for Defendant. RUSCO paid the Plaintiffs in accordance with their invoices, less a percentage known as the "split," which compensates RUSCO for its services. *See id.* at ¶ 8. Operators like Defendant then pay RUSCO the balance invoiced. *See id.*

In his Class and Collective Action Complaint, filed November 23, 2021, Plaintiff Joshua Palczynsky alleges Defendant, Oil Patch Group has misclassified him and other similarly situated individuals as independent contractors, as opposed to employees. Doc. 1. Collectively, Plaintiffs allege Defendant Oil Patch Group, Inc. failed to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-21, *et. seq*. Doc. 1. On March 28, 2022, RUSCO filed a motion to intervene. Doc. 18. The Court granted RUSCO's motion on July 31, 2023. Doc. 44.

On September 22, 2023, Intervenor RUSCO filed the instant motion to compel arbitration. Doc. 51. Intervenor RUSCO submits that each Plaintiff executed a document titled "Agreement

2

Between Independent Professional & Workrise for Use of Workrise Service" (the "Agreement"). Doc. 51. RUSCO submits that in the Agreement, each Plaintiff unambiguously agreed to arbitrate any disputes related to their work for RUSCO customers and not to participate in any class actions related to any such disputes. *Id.* at 1. To support its position, RUSCO submitted Agreements in the record associated with each Plaintiff. *See* Docs. 51-2, 51-3, 51-4, 51-5. RUSCO also adds that each Plaintiff was also subject to the Workrise Terms of Service. Doc. 51, Exhibit 1 at ¶ 10. Plaintiff Palczynsky executed the Agreement on September 23, 2021, Opt-In Plaintiff Burson on April 15, 2022, Opt-In Plaintiff Miller on March 25, 2019, and Opt-In Plaintiff Smith on July 19, 2019. The 2019 Terms govern Miller's work, and the 2020 Terms adhere to Palczynsky's, Burson's, and Smith's work. *Id.* The relevant provisions are depicted below.

b.  **The Arbitration Agreement**

   i.  <u>**Palczynsky and Burson's Arbitration Agreements**</u>

Plaintiff Palczynsky and Opt-In Plaintiff Burson executed a bold and in all capital letters document titled "AGREEMENT BETWEEN INDEPENDENT PROFESSIONAL & WORKRISE FOR USE OF WORKRISE SERVICE" (the "Agreement"). The plain language of their Agreement is identical. Palczynsky executed his agreement in 2021 and Burson in 2022. The Agreement states in relevant part:

> 5. <u>Interactions with Companies</u>. Any interactions or disputes between you and a Company are solely between you and that Company. Workrise and its licensors shall have no liability, obligation or responsibility for any interaction between you and any Company.

Doc. 51, Exhibit 2 at 4-5, Doc. 51, Exhibit 3 at 4-5. The Agreement continues:

> 14. <u>Dispute Resolution</u>. In the interest of resolving any disputes between you and Workrise, or you and Company – an intended third party beneficiary of this Dispute Resolution Section—in the most expedient and cost effective manner, the Parties affirmatively agree that every claim, controversy, allegation, or dispute arising out of or relating in any way to the Project, the Project Details, or this Agreement

3

> ("Work Dispute), both past and future, including without limitation before the Project, after completion of the Project, and after abandonment of the Project, shall be resolved by binding arbitration administered by one arbitrator through the American Arbitration Association. This agreement to arbitrate shall extend to any entity you sue concerning a Work Dispute and allege is your employer, jointly or otherwise. Such entity is likewise an intended third-party beneficiary of this Dispute Resolution Section.…

Doc. 51, Exhibit 2 at 4-5, Doc. 51, Exhibit 3 at 4-5. The Agreement also contains the following clause:

> This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of the Project, the Project Details, or this Agreement, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of this agreement.

Doc. 51, Exhibit 2 at 6, Doc. 51, Exhibit 3 at 6. The Agreement further states, in capital letters, that:

> YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THIS AGREEMENT, YOU AND WORKRISE ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION. YOU AGREE THAT YOU MAY BRING CLAIMS AGAINST WORKRISE OR COMPANY ONLY IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR A CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDINGS. ADDITIONALLY, YOU AGREE YOU ARE WAIVING THE RIGHT TO TRIAL BY JURY AGAINST COMPANY.

Doc. 51, Exhibit 2 at 6, Doc. 51, Exhibit 3 at 6. In each Agreement, the parties also make reference to the American Arbitration Association's Optional Appellate Arbitration Rules.

   ii.   **Smith and Miller's Arbitration Agreement**

Opt-In Plaintiff Smith and Opt-In Plaintiff Miller executed a similar document titled "AGREEMENT BETWEEN INDEPENDENT PROFESSIONAL & RIGUP FOR USE OF RIGUP SERVICE" (the "Agreement"). Miller executed his agreement in 2019 and Smith executed his agreement in 2021. The plain language of their Agreement is nearly identical, except for the incorporated terms. The Agreement they signed states in relevant part:

4

> This Agreement Between Independent Professional & RigUp For Use of RigUp Service (the "Agreement") constitutes a binding agreement between you, an independent professional ("you") and RUSCO Operating, LLC, a wholly owned subsidiary of RigUp, Inc. ("RigUp" "us" or "we") governing your use of the Service (as defined in the RigUp Terms of Service at https://www.rigup.com/tos) to provide freelance services to third party companies (each a "Company" or collectively the "Companies"). You hereby agree: (a) to comply with this Agreement; and (b) that you have read, understand, and agree to (i) the RigUp Terms of Service located at https://www.rigup.com/tos ("Terms"), (ii) the RigUp Privacy Policy located at https://www.rigup.com/privacy (the "Privacy Policy"), each of which are incorporated into this Agreement by reference.

Doc. 51, Exhibit 4 at 1, Doc. 51, Exhibit 5 at 1.

   iii.   **Terms of Service Governing the Agreement**

The 2019 Terms of Service incorporated into Miller's agreement state the following in bold and capital letters:

> **24. Dispute Resolution and Arbitration**
> a. Generally. In the interest of resolving disputes between you and RigUp, or you and RigUp's customers, in the most expedient and cost effective manner, you and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration….. YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THESE TERMS, YOU AND RIGUP ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

Doc. 51, Exhibit 6 at 16. The document continues:

> c. Arbitrator. Any arbitration between you and RigUp, or you and RigUp's customers, will be settled under the Federal Arbitration Act, and governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by these Terms, and will be administered by the AAA…

The 2019 Terms also states in pertinent part that:

> h. Enforceability. The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement.

Doc. 51, Ex. 6 at 18.

The 2021 Terms of Service incorporated into Palczynsky's, Burson's, and Smith's agreement are like the 2019 Terms of Service in Miller's agreement. The 2021 Terms of Service state in bold and capital letters:

> **15. Dispute Resolution; Binding Arbitration**
> PLEASE READ THE FOLLOWING SECTION CAREFULLY BECAUSE IT REQUIERES YOU TO ARBITRATE CERTAIN DISPUTES AND CLAIMS WITH WORKRISE AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM US.

Doc. 51, Exhibit 7 at 4. The 2021 Terms continue:

> YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THESE TERMS, YOU AND WORKRISE ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION. YOU AGREE THAT YOU MAY BRING CLAIMS AGAINST WORKRISE OR ITS CUSTOMERS AND OTHER THIRD PARTY BENEFICIERIES OF THIS AGREEMENT ONLY IN YOUR INDIVIDUAL CAPACITY AND NOT AS PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING, ADDITIONALLY, YOU AGREE YOU ARE WAIVING THE RIGHT TO TRIAL BY JURY AGAINST WORKRISE AND OTHER THIRD PARTY BENEFICIARIES OF THIS AGREEMENT.

Doc. 51, Exhibit 7 at 5. The document also states:

> g. Enforceability. The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement…….

Doc. 51, Exhibit 7 at 7. In both the 2019 Terms and the 2021 Terms, the parties also make reference to the American Arbitration Association rules. *See* Doc. 51, Ex. 6, and Ex. 7.

### c. The Parties' Arguments

RUSCO seeks to enforce the Agreement and compel Plaintiffs to arbitrate the merits of their claims. *See* Doc. 51. Alternatively, RUSCO asks that Plaintiffs be compelled to arbitrate the arbitrability of their claims or that Plaintiffs be prohibited from proceeding through a class or collective action to pursue their claims. *Id.* In support of their position, RUSCO makes three main arguments. First, it argues that any gateway questions of whether Defendant OPG is an intended

6

beneficiary, is a question for the arbitrator to decide because each of the Plaintiffs agreed to a delegation clause. *See* Doc. 51 at 7. RUSCO submits that the provision providing "exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement" to an arbitrator is the delegation clause. Doc. 51 at 7. RUSCO adds that when parties agree to a delegation clause, the district court does not possess the authority to decide the arbitrability of an issue. *Id.* at 6. Second, should the Court find that there is no delegation clause, RUSCO argues that Plaintiffs' claims are still arbitrable because the allegations in the Complaint fall within the scope of the arbitration agreement. *Id.* at 8-10. Specifically, Plaintiffs agreed to arbitrate any disputes related to their work for RUSCO customers and not to participate in any class actions related to any such disputes in their Agreement. *Id.* at 6. Third, in the alternative, RUSCO seeks a ruling forbidding the RUSCO plaintiffs from pursuing their claims in a class or collective action. *Id.* at 12.

Plaintiffs oppose the motion. *See* Doc. 62. Plaintiffs first request sanctions against RUSCO and argue that issue preclusion applies because in *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279 (4th Cir. 2023) the Fourth Circuit rejected the same arguments that RUSCO makes in its pending Motion to Compel Arbitration. *Id.* at 4. Second, Plaintiffs do not dispute they signed the Agreement, however Plaintiffs suggest that the Court, not the arbitrator, must first decide if Defendant is the real party of interest and the intended third-party beneficiary of the Agreement. *Id.* at 5-10. Third, Plaintiffs argue that assuming the Court finds Defendant is an intended beneficiary, the language in the arbitration agreement is inconsistent and creates disputed issues of fact and jury trial on this issue is necessary. *Id.* Plaintiffs suggest that RUSCO cannot "disclaim any liability, obligation or responsibility for disputes between OPG and Palczynsky, Miller, Smith

7

and Burson on the one hand while simultaneously forcing them, on the other hand, to resolve those same disputes under conditions that it sets and at additional expense to them." *Id.* at 8.

In its reply, RUSCO makes five arguments. First, it argues that issue preclusion does not apply because the issues taken by the Fourth Circuit in *Rogers* are factually and legally different than the issues at stake in this matter. *See* Doc. 64 at 2-3. RUSCO submits that unlike in *Rogers*, the language in the Agreement at issue here extends to disputes between RUSCO, Plaintiffs, and RUSCO's customers. *Id.* Therefore, because the contracts at stake here are not identical to the ones involved in the *Rogers* action, Plaintiffs fail to meet at least one element of issue preclusion. *Id.* Moreover, in *Rogers*, Tug Hill Operating, LLC, filed a Motion to dismiss the Plaintiff's action under Federal Rules Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), while here RUSCO filed a Motion to Compel Arbitration or in the alternative require the RUSCO Plaintiffs to proceed individually. *Id.*

Second, RUSCO responds that it is clear there is a binding delegation clause and once a district court makes this determination, the case should be sent to the arbitrator. *See* Doc. 64 at 4. Said differently, once there is a finding of a valid delegation clause, a district court does not need to decide who the intended third-party beneficiaries are. *Id.* Third, even if the delegation clause is properly challenged, there can be no reasonable dispute that OPG is a willing third-party beneficiary of the Agreement. *Id.* Fourth, the terms of the Agreement make it clear that Plaintiffs waived their right to participate in a class action and must at least be compelled to proceed individually. *Id.* Fifth, Plaintiffs' request for sanctions should be denied because RUSCO's Motion to Compel is not frivolous. *Id.*

## II.
## LEGAL ANALYSIS

Congress enacted the Federal Arbitration Act ("FAA") "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26 (1991). The FAA has created a body of federal substantive law establishing and regulating the duty to enforce arbitration agreements. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, 105 S. Ct. 3346, 3353, 87 L. Ed. 2d 444 (1985). A reviewing court must interpret arbitration clauses liberally and all doubts must be resolved in favor of arbitration. *See Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 798 (10th Cir. 1995).

The FAA's "primary substantive provision," is 9 U.S.C. § 2. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280, 67 Lab.Cas. P 61,768 (10th Cir. 2017). That section makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While the FAA favors arbitration, Section 2 of the FAA requires federal courts "to place such agreements upon the same footing as other contracts." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (internal quotation marks omitted)). "[A] party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Id*. (quoting 9 U.S.C. § 4). A court may order the parties to arbitrate "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

9

Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 79, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (quoting *Dr.'s Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). In enacting the FAA, Congress did not intend to force parties to arbitrate in the absence of an agreement, and therefore the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286–87 (10th Cir. 1997). "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

Under § 2 of the FAA, there are two types of validity challenges: the first "challenges specifically the validity of the agreement to arbitrate," and the second "challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Ctr.*, 561 U.S. at 68 (citation omitted). Only the first type of challenge is relevant to a court's determination of whether the arbitration agreement at issue is enforceable. *Id.* Therefore, a party's challenge to a provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. *Id.*

## III.
## DISCUSSION

In this case, the parties do not dispute that a contract (the Agreement) was formed between Plaintiffs and Intervenor, RUSCO. Plaintiffs do not deny that they signed the Agreement. Nor do Plaintiffs argue that an offer, an acceptance, consideration, and mutual assent under state law were lacking. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N.M. 728, 731, 918 P.2d 7

10

(N.M. 1996) (discussing the elements of contract formation). Therefore, there are no issues with contract formation. *See Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1106–07 (10th Cir. 2020) (holding that the plaintiff "raised an issue of formation" where she alleged that she and class members did not read or accept an arbitration agreement). Plaintiffs also do not raise "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr.*, 561 U.S. at 68. Instead, the parties' disagreement centers on the validity of the agreement to arbitrate gateway questions, specifically, whether Defendant OPG is a third-party beneficiary to the Agreement executed. Thus, the question before the Court is whether the delegation provision is valid under § 2 of the FAA.

**A. The Court Finds There is a Valid and Enforceable Delegation Clause.**

The FAA establishes that parties to a contract may agree that an arbitrator rather than a court will resolve not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' including whether the parties have consented to arbitration or if their agreement pertains to a specific dispute. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *see also Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). This agreement is known as a "delegation clause." *Rent-A-Ctr.*, 561 U.S. at 70. Before deciding whether a dispute is arbitrable, a federal court must first address who should decide arbitrability. *See Belnap v. Iasis Healthcare*, 844 F.3d at 1281("[T]he question of *who* should decide arbitrability precedes the question of whether a dispute is arbitrable.") (emphasis in original). In a case involving a delegation clause, a challenge to the arbitration agreement as a whole is insufficient, the party seeking to avoid arbitration must specifically challenge the delegation clause. *Rent-A-Ctr.*, 561 U.S. at 70, 72.

A district court only considers the enforceability of a delegation clause when a party specifically challenges the said delegation clause. *Rent-A-Ctr.*, 561 U.S. at 79. In *Rent-A-Center*, an employer sought to enforce a delegation provision which provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 66. In response, the employee challenged the validity of the contract as a whole, but nowhere in his opposition to the motion did the employee mention the delegation provision. *Id.* at 73-75. As a result, the Supreme Court affirmed the district court's decision that the delegation provision was valid under § 2 of the FAA. In turn, the employee's challenges to the arbitration agreement were referred to the arbitrator, not the district court. *See id.*

In the instant Motion to Compel, RUSCO submits that the delegation provision is the language which provides that, "The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." Doc. 51 at 7. RUSCO adds that this language is included in each of the Plaintiffs' Agreements. *See id.* In opposition to the Motion to Compel, Plaintiffs did not specifically mention or challenge this delegation provision. *See* Doc. 62. Plaintiffs also do not argue that a delegation provision exists. *See id.* Instead, Plaintiffs rely on *Rogers*, for the proposition that the arbitration agreement should not benefit Defendant because there is not an agreement between Defendant and Plaintiffs to arbitrate. *See id*. at 3-7. Plaintiffs however failed to compare and contrast how the language in the delegation provision at issue in *Rogers* is different or similar from the language in the delegation provisions at issue here. *See generally* Doc. 62. Plaintiffs failed to present these arguments in their written brief and during the July 01, 2024, motion hearing.

As the Supreme Court has explained, if a party "seeks to enforce" a delegation clause, the opposing party must "challenge[] the delegation provision specifically"; otherwise, the court "must treat [the delegation clause] as valid" and "enforce it" under the FAA, "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr.*, 561 U.S. at 72. Therefore, when a party "fails to specifically challenge a delegation clause ..., then the delegation clause will typically require a court to compel arbitration and allow an arbitrator to determine whether the arbitration contract was indeed valid." *Fedor*, 976 F.3d at 1105 (citing *Rent-A-Ctr.*, at 72); s*ee also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) ("If there is no such challenge [to a delegation clause]—or if such a challenge fails—the court must send to the arbitrator any other challenges, including challenges to the validity of the contract as a whole.") (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)).

Next, the Court notes that the Tenth Circuit has upheld delegation clauses that used sufficiently similar language to the delegation clause here. *See Brayman v. KeyPoint Gov. Sols., Inc.*, 83 F.4th 823, 829–30 (10th Cir. 2023) (upholding a delegation clause, stating that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement"); *Belnap*, 844 F.3d at 1281 (upholding a delegation clause by stating that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted and ruled on by the Arbitrator"). For reference, the following language is pertinent to this case, as previously described above:

- 2019 Terms
    - h. Enforceability. The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement. Doc. 51, Ex. 6 at 18.
- 2021 Terms
    - g. Enforceability. The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement……. Doc. 51, Exhibit 7 at 7.

The Court finds that this language expresses specific intent to submit to an arbitrator the question whether an agreement to arbitrate exists and constitutes an express statement of agreement to arbitrate issues of arbitrability.

Therefore, without a challenge to contract formation or to the delegation clause, the Court concludes that the parties clearly and unmistakably agreed to arbitrate all disputes about the "interpretation, applicability, or enforceability" of the Agreement. Any potential arguments from the Plaintiffs that there is no evidence that the delegation clause was entered into clearly and unmistakably fail. As the Tenth Circuit has held, incorporating the American Arbitration Association Employment Arbitration Rules (AAA Rules) into an arbitration agreement "clearly and unmistakably evinces [the parties'] intent to arbitrate arbitrability." *Dish Network LLC v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018). As a result, the Court leaves any challenges to the validity of the Agreement, including the issue of whether Defendant OPG is a real party of interest and the intended third-party beneficiary of the Agreement, for the arbitrator.

### B. Remaining Issues

a. Plaintiffs' Other Arguments

Plaintiffs request sanctions and argue that RUSCO is collaterally estopped from compelling arbitration because the Fourth Circuit in *Rogers v. Tug Hill Operating, LLC*, rejected the same arguments that RUSCO makes in its pending Motion to Compel Arbitration. *Id.* "[C]ollateral estoppel, also called issue preclusion, prevents a party from re-litigating ultimate facts or *issues*

14

actually and necessarily decided in a prior suit." *Ullrich v. Blanchard*, 2007-NMCA-145, ¶ 19, 142 N.M. 835, 839, 171 P.3d 774, 778 (internal quotation marks and citations omitted). Collateral estoppel requires that four elements be present:

> (1) the party against whom collateral estoppel is asserted must be the same party or be in privity with the party to the original action; (2) the subject matter or the cause of action in the two suits must be different; (3) the ultimate facts or issues must have been actually litigated; and, (4) the issue must have been necessarily determined.

*State v. Bishop*, 1992-NMCA-034, ¶ 8, 113 N.M. 732, 734, 832 P.2d 793, 795 (citation omitted).

RUSCO responds that issue preclusion does not apply because the issues taken by the Fourth Circuit in *Rogers* are factually and legally different than the issues at stake in this matter. *See* Doc. 64 at 2-3. RUSCO submits that unlike the language in *Rogers*, the language in the Agreement at issue here extends to disputes between RUSCO, Plaintiffs, and RUSCO's customers. *Id.* In other words, because the contracts at stake here are not identical to the ones involved in the *Rogers* action, Plaintiffs fail to meet at least one element of issue preclusion. *Id.* Moreover, in *Rogers*, Tug Hill Operating, LLC, filed a Motion to dismiss the Plaintiff's action under Federal Rules Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), here RUSCO filed a Motion to Compel Arbitration or in the alternative require the RUSCO Plaintiffs to proceed individually. *Id.* The Court finds issue preclusion does not apply and declines to order sanctions against RUSCO.

Finally, Plaintiffs argue that the language in the Agreement is inconsistent and creates disputed issues of fact which are for a jury should decide. *See* Doc. 62 at 8. Plaintiffs suggest that RUSCO cannot "disclaim any liability, obligation or responsibility for disputes between OPG and Palczynsky, Miller, Smith and Burson on the one hand while simultaneously forcing them, on the other hand, to resolve those same disputes under conditions that it sets and at additional expense to them." Doc. 62 at 8. While the Court acknowledges Plaintiffs' position, the Court having

determined that the delegation provision in the Agreement is valid and enforceable, all threshold issues of arbitrability must be decided by the arbitrator and not this Court.

## IV.
## CONCLUSION

**IT IS THEREFORE ORDERED** that Intervenor's Motion to Compel Arbitration (Doc. 51) is here by **GRANTED** for reasons described in this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE