## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSHUA PALCZYNSKY, ET AL.,**
*individually and on behalf of all class members*
*and those similarly situated*,

     **Plaintiffs,**

     **v.**                     **No. 2:21-cv-01125-DHU-KRS**

**OIL PATCH GROUP, INC.**

     **Defendant,**

**RUSCO Operating, LLC,**

     **Intervenor.**

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court in this putative class action and Fair Labor Standards Act collective action are Plaintiffs' Motion for Conditional Certification (Doc. 80) and Plaintiffs' Motion for Equitable Tolling (Doc. 79). Defendant filed responses to both Motions (Doc. 100, Doc. 87), to which Plaintiffs replied (Doc. 102, Doc. 89). Having considered the arguments made by the parties in their briefing, the record of the case, and the applicable law, the Court will GRANT Plaintiffs' Motion for Conditional Certification and will authorize notice as discussed herein, and will GRANT, in part, and DENY, in part, Plaintiffs' Motion for Equitable Tolling, for the reasons stated below.

## I.
## BACKGROUND AND RELEVANT PROCEDURAL HISTORY

As described by Plaintiffs, Defendant Oil Patch Group, Inc. ("OPG") is a company that "provides production services and technology and downhole services to the oil field industry." Doc. 5 (Plaintiffs' First Amended Class/Collective Action Complaint) ¶ 5.1. To provide these services, OPG retains workers, including Flowback Operators, to perform services on its behalf.

1

*Id.* ¶ 5.2. OPG hires, fires, supervises, sets the pay, determines hours, and approves time sheets with respect to the workers it retains. *Id*. ¶ 5.4. Plaintiffs are all Flowback Operators or other employees who performed flowback operational services, employed or previously employed by OPG. *Id*. ¶ 2.14.

On November 23, 2021, Plaintiffs Joshua Palczynsky and Alfredo Montes filed this lawsuit, "individually and on behalf of all other non-exempt Flowback Operators" currently and formerly employed by OPG, alleging violations of federal and state overtime laws. Doc. 1 (Plaintiffs' Original Class/Collective Action Complaint). Three weeks later, Plaintiffs filed their First Amended Class/Collective Action Complaint, adding several individual Plaintiffs who had consented to joining the action against OPG. Doc. 5. Through these pleadings, Plaintiffs allege that OPG misclassified them, and other similarly situated employees, as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day or in that workweek. *Id*. ¶ 5.6. Plaintiffs allege that through this misclassification, OPG violated both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. §50-4-19, et seq., by failing to pay Plaintiffs the statutorily required overtime compensation for all hours worked in excess of 40 hours. *Id*. ¶ 5.39.

On March 28, 2022, RUSCO Operating, LLC ("RUSCO"), the operator of an online platform which connects workers with oil-and-gas operators, filed its Motion to Intervene, seeking to join the litigation in order to file a motion to compel arbitration of claims made by certain Plaintiffs who had ostensibly entered into arbitration agreements with RUSCO that covered any disputes related to the services RUSCO provides. Doc. 18 at 4.

One day later, on March 29, 2022, United States Magistrate Judge Kevin Sweazea issued an Order finding good cause to delay the scheduling conference which was to take place pursuant to Federal Rule of Civil Procedure 16, until after RUSCO's Motion to Intervene was decided.  Doc. 22; Doc. 23.

Five months later, on August 22, 2022, Plaintiffs filed their initial Motion for Conditional Certification, requesting the Court conditionally certify a collection action pursuant to the FLSA and authorize notice to be sent to similarly situated OPG employees. Doc. 32 at 6-7.  On the same day, Defendant OPG filed a Motion to Stay Proceedings. Doc. 33. In its motion, OPG requested that the Court stay the litigation until it resolved RUSCO's Motion to Intervene and to deny Plaintiff's Motion for Conditional Certification as premature.  *Id*. at 1.

On September 02, 2022, Judge Sweazea granted, in part, OPG's Motion to Stay Proceedings, staying the litigation until RUSCO's request to intervene was decided. Doc. 39 at 4. Judge Sweazea agreed with OPG "that it would be most efficient to delay briefing on class certification until [RUSCO's] Motion to Intervene and any motions to arbitrate are resolved, and after a scheduling order is entered for discovery on the class certification issue." *Id*. at 3.

On July 31, 2023, the Court entered its Memorandum Opinion and Order, granting in part RUSCO's Motion to Intervene, and on September 22, 2023, RUSCO filed its Motion to Compel Arbitration. Docs. 44, 51.  In its motion, RUSCO requested that the claims of four individual Plaintiffs be ordered to proceed in arbitration because each of these Plaintiffs had agreed to arbitrate any disputes related to their work for RUSCO customers, including OPG, and not to participate in any class actions related to any such disputes. Doc. 51.

On October 12, 2023, Judge Sweazea held the previously delayed scheduling conference with the parties. Doc. 55. Thereafter, he adopted the parties' Joint Status Report and entered a Rule

16 Scheduling Order, which included a January 29, 2024 deadline for submitting class certification motions. Doc. 57.

On November 7, 2023, Judge Sweazea issued an Order stating that because he had set a new deadline for Plaintiffs to file their motions related to class certification, the Court would also set a deadline of November 14, 2023, for Plaintiffs to withdraw their initial Motion for Conditional Certification. Doc. 65. On November 14, 2023, Plaintiffs withdrew their initial Motion for Conditional Certification. Doc. 66.

On February 27, 2024, Judge Sweazea held a second scheduling conference, adopted the parties' most recent Joint Status Report, and issued a new Scheduling Order, which included a new deadline of July 29, 2024 for Plaintiffs to file motions related to class certification. Docs. 73, 74, 75.

On May 3, 2024, Plaintiffs filed their Motion for Equitable Tolling, requesting that the Court equitably toll the statute of limitations for all potential opt-in plaintiffs from the date RUSCO filed its Motion to Intervene on March 29, 2022, to the date the Court authorizes notice to potential class members, or issues an order denying conditional certification. Doc. 79.

On May 6, 2024, Plaintiffs filed their second Motion for Conditional Certification. Doc. 80.

On August 19, 2024, the Court issued a Memorandum Opinion and Order, granting RUSCO's Motion to Compel Arbitration. Doc. 98.

On September 18, 2024, Defendant OPG filed its response to Plaintiffs' second Motion for Conditional Certification. Doc. 100.

**II.**
**LEGAL STANDARDS**

**A.  Conditional Certification under the FLSA**

Under Section 216(b) of the FLSA, employees may maintain a collective action for unpaid minimum wages on their behalf or on behalf of other workers. This section provides that any employer violating the minimum wage section of the statute "shall be liable to the employee or employees affected in the amount of the unpaid minimum wages or their unpaid overtime compensation," and any additional damages. 29 U.S.C. § 216(b). Employees must opt-in to a FLSA collective action by giving consent in writing and filing the consent with the Court. *See id.*

The FLSA further provides that an action on liability "may be maintained in any court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.* The purpose of a FLSA collective action is to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and to benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480  (1989).

Section 216(b) does not define the term "similarly situated." *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). However, courts in the Tenth Circuit use a two-tier methodology to determine on a case-by-case basis whether members of a class are similarly situated. *See id.* at 1102-05. In the first stage, called the "notice stage," the court determines whether the plaintiffs are similarly situated. *Id.* at 1102 (citation omitted). The court typically makes its decision "based on the allegations in the complaint, which may be supported by sworn statements." *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-CV-00580-KWR-KK, 2021 WL 5861184, at *2 (D.N.M. Dec. 10, 2021) (citing *Landry v. Swire Oilfield Services, L.L.C.*, 252 F.

Supp. 3d 1079, 1114–15 (D.N.M. 2017)). The district court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. This is a "lenient standard" that "typically results in conditional certification of a representative class." *Felps v. Mewbourne Oil Co., Inc.*, 460 F. Supp. 3d 1232, 1235–36 (D.N.M. 2020) (citation omitted); *see also Medrano v. Flowers Foods, Inc.*, No. CV 16-350 JCH/KK, 2017 WL 3052493, at *2 (D.N.M. July 3, 2017) ("[t]he standard for certifying an FLSA collective action is fairly loose initially, until discovery is completed."). "[T]he court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiff's claims" in the notice stage. *Felps*, 460 F. Supp. 3d at 1236. The plaintiff bears the burden of showing that he is similarly situated to other potential class members. *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 663 (D.N.M. 2015). If the plaintiff has satisfied this burden, the result is "the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 449, 136 S. Ct. 1036, 1043, 194 L. Ed. 2d 124 (2016) (citation omitted).

Step two occurs after the close of discovery and is often prompted by a defendant's motion for decertification. *See Thiessen*, 267 F.3d at 1102. In this second stage, a court applies a "stricter standard of 'similarly situated.'" *Id*. at 1103. "Once the parties know which individuals will be part of the class, the court may reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Guarriello v. Asnani*, 517 F. Supp. 3d 1164, 1172 (D.N.M. 2021) (citation and internal quotation marks omitted).

**B.  Equitable Tolling**

An action under the FLSA must "be commenced within two years after the cause of action accrued," except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a). Unlike Rule 23 class actions, which contain an "opt-out" provision, a collective action under the FLSA has an "opt-in" mechanism whereby plaintiffs may join the action by written consent.  29 U.S.C. § 256(b).  For those plaintiffs named in the initial complaint who provided written consent to join the action, the FLSA action "commences" upon the filing of the complaint. 29 U.S.C. § 256(a). For those plaintiffs not named in the initial complaint, a FLSA action is considered "commenced" when that plaintiff files written consent to join the action.  29 U.S.C. § 256(b).  In other words, "the filing of a complaint does not stop the statute of limitations from running in a collective action [for those not named in the complaint]; rather, it is only the filing of a consent to opt-in that stops the limitations period from expiring."  *Felps*, 460 F. Supp. 3d at 1238.

The doctrine of equitable tolling  permits courts to extend statutes of limitations on a case-by-case basis in order to prevent inequity and when doing so would be in the interest of justice. *See Stransky v. HealthONE of Denver, Inc*., 868 F. Supp. 2d 1178 (D. Colo. 2012). The majority of courts have found equitable tolling to be an available remedy under the FLSA, including the courts of this federal district.  *See Felps*, 460 F. Supp. 3d at 1238-39; *Pruess v. Presbyterian Health Plan, Inc*., No. CV 19-629 KG/JFR, 2020 WL 6544243, at *9 (D.N.M. Nov. 6, 2020); *Abrams v. City of Albuquerque*, No. 10-0872 MV/RHS, 2014 WL 11497810, at *8 (D.N.M. June 26, 2014). The Tenth Circuit of Appeals has yet to address equitable tolling in the context of a FLSA collective action, but has generally stated that tolling is appropriate "where the circumstances of the case rise to the level of actual deception, where a plaintiff has been lulled into inaction by her past employer,

state or federal agencies, or the courts, or where a plaintiff has in some extraordinary way been prevented from asserting his or her rights." *Felps*, 460 F. Supp. 3d at 1238-39. The Supreme Court of the United States likewise has not addressed equitable tolling in FLSA collective action cases, but has stated that, "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).

"[T]he decision to invoke equitable tolling in a particular case lies exclusively within the sound discretion of the trial court." *Felps*, 460 F. Supp. 3d at 1239.

## III.
## DISCUSSION

### A. Conditional Certification

As discussed above, Plaintiffs are current and former employees of Defendant OPG who allege that OPG failed to pay them in accordance with the Fair Labor Standards Act or the New Mexico Minimum Wage Act. Doc. 5 ¶ 1.3. More specifically, Plaintiffs allege that during the time they worked as Flowback Operators for OPG they were misclassified and paid as independent contractors. *Id.* As a result of this misclassification, allege Plaintiffs, OPG failed to pay them, and the members of the putative collective action for which they seek conditional certification, at time and one half their regular rate of pay for hours worked in a workweek in excess of forty hours. *Id.*

Plaintiffs bring this action on behalf of themselves and other similarly situated individuals and seek to certify their FLSA wage claims as a collective action under 29 U.S.C. § 216(b). Plaintiffs request the Court conditionally certify and authorize notice to be sent to similarly situated OPG employees, and propose the following collective action:

> All Flowback Operators providing services to Defendant who were paid a day-rate and no overtime and who worked more than 40 hours in one or more individual workweeks in New Mexico beginning three years prior to the date of the filing of this lawsuit.

Doc. 80 at 7. Providing affidavits in support of their Motion, Plaintiffs assert that they are similarly situated to the Flowback Operators who compromise the putative collective class because they all had similar job duties and pay, and they all shared a common employment experience while working for OPG. *Id*. at 9.[1] According to Plaintiffs, the putative class members were typically scheduled for 12-hour shifts, 7 days a week, for weeks at a time. *Id*. OPG required these Flowback Operators to work anywhere from 60 to 84 hours or more each week – well in excess of a 40-hour workweek. *Id*. Moreover, OPG maintained control of all aspects of the putative class members' work, assigning putative class members to specific locations and dictating the hours that they would work. *Id*. None of the Plaintiffs or putative class members made significant monetary investments to perform their work and the amount they made was dependent solely on the number of days they worked. *Id*. at 11. Plaintiffs further allege that neither they or the putative class members were required to possess any unique or specialized skillset to perform their work duties, and all had similar job duties related to oil and gas operations in the field. *Id*. Plaintiffs and putative class members also had no input into the creation or modification of their job duties and were not afforded independent judgment or discretion to deviate from OPG's directives. *Id.* at 12.

Defendant OPG does not oppose conditional certification or Plaintiffs' initial assertion that they are similarly situated to the Flowback Operators who would compromise the putative collective class, but argues that this Court should place "reasonable limits on the scope of the conditional class and revise the proposed notice to ensure the collective action proceeds efficiently,

---

[1] *See* Doc. 80-3 (Declaration of Mike Bell); Doc. 80-4 (Declaration of Thomas Russell); Doc. 80-5 (Declaration of Justin Fleming).

fairly, and transparently." Doc. 100 at 2. First, explains Defendant, subject to equitable tolling, the putative class should only include those who resided in New Mexico during the three years before the date notice is sent. *Id*. at 5. This limitation is required, it is argued, because the Court lacks both general jurisdiction over OPG and specific personal jurisdiction over non-New Mexico residents who suffered harm outside of New Mexico. *Id*. at 5-6. Second, Defendant requests the Court exclude from the proposed putative class any individual employee of OPG that entered into an arbitration agreement. *Id*. at 11. Finally, Defendant raises several issues with Plaintiff's proposed notice to putative class members, including when the "lookback period" in collective actions begins, whether language about potential costs and fees should be included in the notice, what method (or methods) of notice should be utilized, if a reminder notice is warranted, whether putative class members should be instructed to preserve evidence, and if it is appropriate to instruct potential class members to contact Plaintiff's counsel for further information. *Id*. at 13-18.

1. **At This Stage of Litigation, the Proposed Collective Action Raises No Issue of Concern Regarding Personal Jurisdiction Over the Claims Brought Against Defendant OPG.**

Defendant OPG argues that this Court lacks both general and specific personal jurisdiction in this case. More specifically, according to Defendant, this Court does not have general personal jurisdiction over it because OPG is incorporated in Delaware, maintains its corporate headquarters and principal place of business in Texas, and Plaintiff cannot show that its in-forum contacts are so continuous and systematic as to render it essentially at home in New Mexico. *Id*. at 5-6 (citing *Bone v. XTO Energy, Inc.*, 561 F. Supp. 2d 1132 (D.N.M. 2021)).

Relying on the United States Supreme Court decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 528 U.S. 255, 137 S. Ct. 1773, 198 L.Ed.2d 395 (2017), Defendant also takes the position that "the proposed putative class fails to satisfy

specific personal jurisdiction." *Id*. at 6. This is so, according to Defendant, because "Plaintiffs' proposed class would allow non-residents to join the putative class – effectively opening the putative class to any individual who performed over 40 hours of work in New Mexico – even if they did not suffer any alleged harm within the states' boarders [sic]." *Id*. Defendant explains its position, stating that in *Bristol-Myers*, which involved a mass tort case, the Supreme Court held that courts must engage in a claim-by-claim analysis of specific personal jurisdiction even in the context of aggregate litigation. *Id*. at 7.

In *Bristol-Myers*, 86 California residents and 592 others asserted state law product liability claims against a pharmaceutical company related to a drug manufactured and sold by the company. *Id*. at 259.  The non-resident plaintiffs in the litigation did not allege that they obtained the drug in California, that they were injured by the drug in California, or that they were treated for injuries in the state.  *Id*. at 259-60.  The Supreme Court thus determined that the Fourteenth Amendment's Due Process Clause prohibited the California state court from exercising specific jurisdiction over the state-law claims asserted by plaintiffs who did not reside in California against the defendant pharmaceutical company. *Id.* at 268-69. The Court reasoned that "[t]he mere fact that other plaintiffs were prescribed, obtained, and ingested [the drug] in California – and allegedly sustained the same injuries as did the nonresidents – [did] not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id*. at 265.

Defendant points out that district courts in this circuit, including the District of New Mexico, have applied *Bristol-Myers* to FLSA collective actions and have found no specific personal jurisdiction over non-resident employers as to claims by non-resident employees in such cases. Doc. 100 at 7. The federal court decision from this district which Defendant relies on is *Bone v. XTO Energy, Inc*., which held that *Bristol-Myers* applied to FLSA collective actions in part

because mass tort actions and collective actions brought pursuant to the FLSA "bear enough similarities that the holding in *Bristol-Myers* applies to both." *XTO Energy*, F. Supp. 3d at 1137.

Plaintiffs do not respond to Defendant's argument concerning the lack of general jurisdiction over OPG, so the Court will assume that they do not dispute it. Plaintiffs do, however, dispute that the Court lacks specific personal jurisdiction over the claims of the putative class, arguing that, although "Courts remain divided as to whether *Bristol-Myers* even applies to FLSA collective actions . . . the prevailing – and correct – view is that it does not." Doc. 102 at 2. For this proposition, Plaintiffs cite and quote at length, *Warren v. MBI Energy Servs., Inc.*, No. 19-CV-00800-RM-STV, 2020 WL 937420 (D. Colo. Feb. 25, 2020), a decision from a federal district court in Colorado, and *Dahl v. Petroplex Acidizing, Inc*., No. 22-252 GJF/DLM, 2024 WL 22087, at *3 (D.N.M. Jan. 2, 2024), a decision from this federal district. In *Dahl*, the court determined that the holding of *Bristol-Myers* is not applicable to FLSA collective actions for a number of reasons, including that the FLSA does not purport to preclude claims by out-of-state opt-in plaintiffs, that a FLSA collective action – like a class action – promotes efficiency and uniformity in the resolution of common issues of law and fact, and that extending *Bristol Meyers* to FLSA collective actions would "threaten[] to undermine the congressional policy of providing an efficient mechanism for similarly situated employees to enforce wage and hour laws against their employer in a single collection action." *Dahl*, 2024 WL 22087 at *12. In the alternative, Plaintiffs argue that, even if *Bristol-Meyers* does apply to this collective action, addressing the issue of specific personal jurisdiction is premature because it would not be possible to establish specific personal jurisdiction for each person who joins the collective action until they actually consent to join it. Doc. 102 at 5.

The Tenth Circuit Court of Appeals has not yet determined whether the holding in *Bristol-Myers* applies to FLSA collective actions, and the Court notes that this district currently has two judicial decisions that are at odds with each other on the issue. Both decisions, it appears, rely on sound legal reasoning to reach their respective positions and, if required, this Court could weigh in on the debate. But the Court finds it unnecessary to do so at this time because, despite Defendant's insistence that conditional certification of the putative class proposed by Plaintiffs could result in individual employees joining the putative class who were not harmed while working in New Mexico, the Court finds that it is highly unlikely that this would or could occur. Unlike the cases in *XTO Energy* and *Dahl*, the proposed putative collective action does not include employees who worked "*anywhere* in the United States" or "in New Mexico *and* Texas." *XTO Energy*, 561 F. Supp. 3d at 1134; *Dahl*, 2024 WL 22087 at *3. Instead, the putative collection action Plaintiffs seek to certify only includes employees who were paid a day rate and no overtime when working over 40 hours a week *in New Mexico*. Doc. 80 at 7. Thus, the concern that the defendants in *XTO Energy* and *Dahl* raised regarding the possibility of workers being part of a collection action in a state where they were not injured or harmed by the alleged unlawful practices of an employer, is simply not present here, rendering Defendant's objection without merit.

For this reason, the Court need not determine whether *Bristol-Meyers* applies to this collective action because Plaintiffs have met their initial burden of showing that the Court would have specific personal jurisdiction over each member of the proposed putative class. To the extent issues regarding specific personal jurisdiction arise at a later stage in these proceedings, the Court may determine whether and how to address them at that time. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1069-70 n.3 (10th Cir. 2008) (explaining that "even if personal

jurisdiction is contested and found initially on the pleadings and by affidavit, it may be reviewed

again at subsequent stages in the trial court proceedings as evidence accumulates.").

Defendant's request to limit the putative class at this stage of the certification process in

the manner described above, is therefore denied.

## 2.  The Court Will Not Deny Notice to Putative Class Members Who May Have Signed Arbitration Agreements.

Defendant OPG also takes issue with Plaintiffs' request for conditional notice to the

proposed collective action because, in its view, notice should not be sent to individuals who signed

arbitration agreements.  Doc. 100 at 10-11.  In support of its brief argument, Defendant cites to *In*

*re JPMorgan Chase & Co*., 916 F.3d 494 (5th Cir. 2019), a decision from the Fifth Circuit Court

of Appeals, and *Daugherty v. Encana Oil & Gas (USA), Inc*., 838 F. Supp. 2d 1127 (D. Colo. 2011).

Defendant also notes that this Court has already issued an order subjecting four of the named

Plaintiffs who originally filed this action to arbitration.  Doc. 100 at 11.

The Court is not persuaded that notice to putative members of the proposed collective

action should exclude all employees who may have signed arbitration agreements. First, as a

practical matter, limiting notice to the putative  collective action as proposed by Defendant and the

Fifth Circuit in *JPMorgan*, would be inefficient, time-consuming, and not at all in line with the

Tenth Circuit's admonition that, to certify a class and proceed with notice "requires nothing more

than substantial allegations that the putative class members were together the victims of a single

decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.  The process directed by the Fifth Circuit

and ostensibly proposed by Defendant here[2] would require the Court to first allow time for the

"submission of additional evidence [concerning those who may have signed arbitration

---

[2] While arguing that the notice to the putative class should exclude those who signed arbitration agreements, Defendant does not explain how that process would work.

agreements] at the conditional certification stage" . . . and then determine whether Defendant has met its "burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee." *JPMorgan Chase & Co*., 916 F.3d at 503.  This process, of course, would add even more time to the resolution of this collective action which has been on the Court's docket for *three and a half years*, and has yet to be conditionally certified. Doc. 1.

Even if the Court were to engage in this process, there is no indication that Defendant could, at this stage of the litigation, identify those with arbitration agreements, much less valid and enforceable ones. Plaintiffs first moved for conditional certification of this putative collective action on August 22, 2022 – more than two and a half years ago.  Doc. 32.  A year later, Intervenor RUSCO filed its Motion to Compel Arbitration, identifying four individuals of the proposed collective action who had signed arbitration agreements which related to their employment with OPG.  Doc. 51.  Since that time, neither Defendant or RUSCO have identified any other individuals who may have signed arbitration agreements which would preclude those individuals from participating in this litigation.

 This reality demonstrates why the circumstances of the putative collective action in *JPMorgan* is distinguishable from the one currently before this Court.  In *JPMorgan*, the defendant had identified approximately 35,000 individuals within the proposed class of 42,000 current and former employees who had waived their right to proceed collectively by signing binding arbitration agreements. *See JPMorgan Chase & Co*., 916 F.3d at 498. Importantly, the plaintiffs in that case did not contest that at least some employees had signed such agreements containing class and collective action waivers. *Id*. In fact, the plaintiffs represented that they did not intend to contest the validity or enforceability of those agreements – instead, they maintained that employees who had valid arbitration agreements would arbitrate, and those who did not would proceed in court.

*Id.* Such is not the case here. Plaintiffs have not agreed that there may be other potential members of the class who have signed valid and enforceable arbitration agreements and, other than making its request to limit the notice, neither has Defendant. At this stage of the certification process, it would be wholly speculative to assume that other putative class members signed valid and enforceable arbitration agreements that would preclude them from participating in this collective action.[3]

The Tenth Circuit Court of Appeals has not yet addressed whether district courts should consider the existence of arbitration agreements during the conditional certification stage. But the Court agrees with the observation in a prior decision from this district that "the current weight of law in this Circuit holds that a collective may be conditionally certified, and notice given, notwithstanding that some of the prospective members of the collective may have signed arbitration agreements." *Pogue*, 2021 WL 5861184, at *8 (citing *Judd v. Keypoint Gov't Sols., Inc*., No. 18-CV-00327-RM-STV, 2018 WL 7142193, at *4 (D. Colo. Dec. 4, 2018); *Beattie v. TTEC Healthcare Sols., Inc.*, No. 1:18-CV-03098-RM-NRN, 2019 WL 2866559, at *1 (D. Colo. July 3, 2019)). As has been previously and acutely observed, "Neither the FLSA nor the Tenth Circuit require that notice be withheld from potential class members merely because they signed an arbitration agreement." *Id*. (citing *Judd*, 2018 WL 7142193, at *5).

For these reasons, the Court will not modify the proposed notice to exclude individuals who may have signed arbitration agreements.

---

[3] The Court does not find *Daugherty*, the other case cited by Defendant, to be particularly helpful or relevant here. There, as was the case in *JPMorgan*, the district court limited the collective action to exclude notice to those who had been identified as having signed Independent Contractor Agreements containing arbitration provisions. *Daugherty*, 838 F. Supp. 2d at 1133. Here, no individuals beyond those who are already engaged in arbitration have been identified as having executed similar agreements.

**3.**  **The Court Will Approve Plaintiffs' Proposed Notice to Putative Members of the Collective Action With the Modifications Stated Below**.

Defendant also objects to the proposed notice to the collective action on several other grounds. According to Defendant, the proposed notice should set the "lookback period" from the date notice is sent to the putative collective action rather than the date the lawsuit was filed; the proposed notice should advise putative class members of potential costs; the putative members should not be "inundated" with request to join the collective action through text message, phone calls, emails and traditional mail; Plaintiffs should not be allowed to make "live phone calls," including "follow-up" phone calls and leaving voicemails to putative class members; reminder notice is not necessary or appropriate; the notice should include instructions to preserve evidence; and the notice should not encourage potential members to contact Plaintiffs' counsel if they need more information or have further questions.

**a.**  **The lookback period**

Defendant OPG objects to the proposed notice because it limits certification to workers employed by Defendant up to three years before this lawsuit was filed. Doc. 100 at 13. According to Defendant, it is well settled that, subject to equitable tolling, the three-year statute of limitations for opt-in plaintiffs must run from the date notice issued, not the date the complaint was filed. *Id*. This is so, asserts Defendant, because a FLSA action is "commenced with respect to the named plaintiff[ ] on the date [his] complaint was filed, but [ ] the action is commenced with respect to the unnamed opt-in plaintiffs when their opt-in consent is filed." *Id*. (quoting *Zamora v. Sw. Glass & Glazing, Inc*., No. 1:15-CV-01041-RJ, 2016 WL 10516172, at 3* n.2 (D.N.M. Aug. 23, 2016)). In support of this contention, Defendant cites to several other decisions from this federal district including *Rivera v. CHSPSC, LLC*, No. 2:23-CV-00336-KWR-KK, 2024 WL 3509701 (D.N.M. July 23, 2024), *Hembree v. 3-D Oil Field Servs. & Rental*, *L.L.C*., No. CIV 20-00343 RB/CG,

2020 WL 7642862 (D.N.M. Dec. 23, 2020), *Pogue*, 2021 WL 5861184, at *9, and *Kerr v. K. Allred Oilfield Servs.*, *LLC*, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017 (D.N.M. Nov. 19, 2020).

Plaintiffs do not respond to Defendant's argument in their reply, but the Court agree that in this district, courts have routinely held that the appropriate lookback period is either the date that notice is authorized or the date that a collective action is certified. *See Zamora*, 2016 WL 10516172, at *3 n.2 (three years from date notice is authorized); *Kerr*, 2020 WL 6799017, at *7 (three years from date of certification); *Pogue*, 2021 WL 5861184, at *9 (three years from date notice is approved); *Hembree*, 2020 WL 7642862, at *2 (three years from conditional certification). Because the Court is conditionally certifying the collective action in this Order, and will approve notice once appropriate modifications are made, the appropriate lookback period will be three years from the date of the filing of this Order.

### b. Potential costs

Defendant next argues that the proposed notice to putative members of the collective action should include language about potential payment of costs and fees to properly notify them "of both the promise and peril of opting into the lawsuit." Doc. 100 at 15 (quoting *Aguilar v. Mgmt. & Training Corp.*, Civ. No. 16-050 WJ/GJF, 2017 WL 4277139, at *9 (D.N.M. Jan. 27, 2017)). Defendant also asserts, without citation to legal authority, that the notice should also notify putative class members that Plaintiff's counsel may receive a portion of any settlement obtained or money judgment entered in favor of the class. Doc. 100 at 14-15. Plaintiffs do not respond in opposition to Defendant's request regarding language notifying potential class members that they may be liable for costs if they do not succeed in this lawsuit but do argue that reference to paying attorney's fees should be excluded from the notice. Doc. 102 at 7.

The Court finds that language advising the putative class members that they could be responsible for paying court costs, not including attorney's fees, would be appropriate here. In this district, such language is routinely included in the interest of fairness and accuracy. *See Landry*, 252 F. Supp. 3d at 1127-28; *Aguilar*, 2017 WL 4277139, at *9; *Pruess*, 2020 WL 6544243, at *6; *see also Hoffmann–La Roche*, 493 U.S. at 172, 110 S.Ct. 482 (holding that courts should ensure that notice is "timely, accurate, and informative"). Furthermore, the Court will Order that the Plaintiffs include language stating that potential liability for court costs does not mean that Plaintiffs would be responsible for Defendant's attorney fees. The Court finds no basis, however, to notify putative class members that Plaintiff's counsel may receive a portion of any settlement obtained or money judgment entered in favor of the class.

### c. Methods of Notice and Reminder Notice.

Defendant objects to the methods of providing notice proposed by Plaintiffs, which would include text, email, and regular mail. Doc. 100 at 15. According to Defendant, Plaintiffs fails to demonstrate a need for all requested forms of communication and should not be allowed to make telephone calls or leave voice messages to putative class members if notices are returned as undeliverable. Defendant also takes issue and objects to Plaintiffs' request to send identical reminder notices by mail, email, and text message half-way through the 60-day opt-in period. One of Defendant's stated concerns is that repetitive notification may improperly suggest the Court's endorsement of Plaintiffs' claims.

The Court finds that notice by text, email and mail are methods of distributing notice which are regularly permitted and appropriate in this district. *See Pogue*, 2021 WL 5861184, at *9; *Landry*, 252 F. Supp. 3d at 1129; *Pruess*, 2020 WL 6544243, at *8.  The same is true for reminder notices, which courts have found "serve[] the FLSA's broad remedial purpose by ensuring that as

many potential plaintiffs as possible are informed of the collective action and their right to opt-in." *Pogue*, 2021 WL 5861184, at *9 (quoting *Landry*, 252 F. Supp. 3d at 1130). The Court sees also no reason why Plaintiffs should not be able to make follow-up phone calls to those putative class members whose contact information appears to be incorrect or no longer valid. As to Defendant's concern regarding the appearance that the Court may be seen as endorsing Plaintiffs' claim, the Court finds it to be without merit given that Plaintiffs' proposed notice includes language stating, "The Court has taken no position regarding the merits of the claims or defenses at issue [and] Oil Patch Group denies all of the allegations in this lawsuit." Doc. 80-1 at 1. The Court will thus overrule Defendant's objections and allow notice to be sent via mail, text, and email, will approve Plaintiffs' request to send reminder notices halfway through the 60-day opt-in period, and will allow Plaintiffs to call and leave voicemail messages to potential class members whose contact information is incorrect.

### d.    Instruction to preserve evidence.

Defendant asks that in the notice to putative collective members there be an instruction to preserve evidence. Doc. 100 at 18. Defendant points out that all litigants have an obligation to preserve evidence once a party knows or should know litigation is imminent. *Id*. In support of its position, Defendant cites to a decision from this federal district wherein such notice language was found to be reasonable and potentially helpful to both parties. *See Saenz v. Rod's Prod. Servs., LLC*, No. 2:14-CV-00525 RB-GBW, 2015 WL 12866985, at **4-5 (D.N.M. Mar. 6, 2015).

Plaintiffs do not respond to Defendant's request and so do not appear to object to this proposed modification. The Court will Order that Plaintiffs add language concerning the obligation of collective action members to preserve evidence as follows:

> If you join this lawsuit, you will be required to preserve all relevant
> evidence that you may have in your possession. If you have records

or communications related to your work for Oil Patch Group, do not
delete them or throw them away. Potential evidence includes
invoices, business records, text messages, emails, and documents
related to your work as flowback operators with OPG.

**e.   Encouraging contact with Plaintiffs' counsel**

Finally, Defendant objects to Plaintiffs' proposed language in the notice which informs

potential collective action members that, if they have any questions about the collective action or

their legal rights, they may contact Plaintiff's counsel.  Doc. 100 at 18.  Defendant argues that such

language "would be an improper (and unethical) Court-authorized solicitation, which the Court

should not condone." *Id*.  Other than to cite to two unpublished district court decisions from outside

this federal district, Defendant provides no further explanation as to how such language would be

improper or unethical – which seems unlikely since the putative collective action members who

opt-in to the litigation will in fact be represented by Plaintiffs' counsel. The Court will not Order

the notice be modified to remove the challenged statement.

**B.  Equitable Tolling**

Plaintiffs request that the Court "protect the interest of absent potential class members who

have been and continue to be affected [by delays allegedly attributable to OPG and RUSCO] by

equitably tolling the statue of limitations for all potential opt-ins from the date RUSCO filed its

Motion to Intervene to the date the Court rules on Plaintiff's forthcoming Motion for Conditional

Certification."  Doc. 79. RUSCO filed it Motion to Intervene on March 28, 2022, and the Court

has now ruled on Plaintiffs' Motion for Conditional Certification.

Defendant OPG does not oppose Plaintiffs' request in its entirety. OPG agrees that

equitable tolling is warranted between September 2, 2022,[4] when the request for stay was granted,

---

[4] Defendant incorrectly states that the stay in this litigation began on September 9, 2022.  Doc. 87 at 2.  A review of the docket indicates that Judge Sweazea entered his Order granting the request for a stay on September 2, 2022. Doc. 39.

to July 31, 2023, when the Court issued its ruling on RUSCO's Motion to Intervene. Defendant also does not oppose equitable tolling of the statute of limitations from May 6, 2024, the time Plaintiff filed their renewed Motion for Conditional Certification, to September 18, 2024, the date that OPG filed its response to the motion.

Thus, while the parties agree that equitable tolling is appropriate in this case, they continue to disagree as to the scope of the tolling that should be ordered by the Court. Given the parties' disagreement, the Court must determine whether equitable tolling is appropriate for three specific time frames. First, the Court must decide whether such tolling would be appropriate from March 28, 2022 (when intervenor RUSCO filed its Motion to Intervene) to September 2, 2022 (the date that the Magistrate Judge ordered a stay of the proceedings); then the Court will address whether equitable tolling is appropriate beyond July 31, 2023 (when the Court issued its Memorandum Opinion and Order granting RUSCO's Motion to Intervene and thus ended the requested stay) to May 6, 2024 (when Plaintiffs' filed their renewed Motion for Conditional Certification) or some other time; and, finally, the Court will consider whether to equitably toll the potential opt-in Plaintiffs' claims from September 18, 2024 (the date of Defendant's Response to Plaintiff's Motion for Conditional Certification), to the time notice is provided to those potential Plaintiffs.

1. **Whether Equitable Tolling Is Appropriate for the Time Between the Filing of RUSCO's Motion to Intervene on March 28, 2022, to the Date the Stay Became Effective on September 2, 2022.**

Plaintiffs identify as the starting part for equitable tolling the filing of RUSCO's Motion to Intervene, which was filed in March 2022. Defendant objects, stating that any delay in this case attributable to the request for intervention is at least partially a result of Plaintiffs' own litigation strategy. According to Defendant, Plaintiffs decided not to name RUSCO as a defendant in this case in the first instance, even though Plaintiffs were aware that the RUSCO Plaintiffs were all

hired, classified, and paid by RUSCO for the work they performed on projects for OPG. Defendant alleges that Plaintiffs should and could have sued RUSCO directly because RUSCO was the party with whom the RUSCO Plaintiffs had actual agreements concerning their classification as independent contractors. Plaintiffs' decision to not name RUSCO as a defendant, argues Defendant, necessitated RUSCO's Motion to Intervene and any delay caused by that filing is of Plaintiffs' own doing.

Plaintiffs provide no basis for, or even an explanation for requesting equitable tolling from the time RUSCO filed its Motion to Intervene until the date a stay was rendered in this litigation. Plaintiffs focus instead on why equitable tolling would be appropriate from the time they filed their initial Motion for Conditional Certification, and the cases they rely on only address that question. *See Pruess*, 2020 WL 6544243, at *9 (concluding that equitable tolling was appropriate beginning on the date plaintiffs filed their request for conditional certification because they had diligently pursued their legal right to do so); *Brayman v. KeyPoint Gov't Sols., Inc*., No. 18-CV-0550-WJM-NRN, 2019 WL 3714773, at *9 (D. Colo. Aug. 7, 2019) (concluding that equitable tolling would apply from the time plaintiffs filed their motion for conditional certification); *Slaughter v. Sykes Enterprises, Inc*., No. 17-CV-02038-KLM, 2018 WL 1556881, at *2 (D. Colo. Mar. 12, 2018) (equitable tolling from time motion requesting tolling was filed); *Abrams*, 2014 WL 11497810, at *8 (applying equitable tolling from the time second motion for conditional certification was filed).

While it is true that the filing of RUSCO's Motion to Intervene set off motion practice on that matter, the Court sees no reason why Plaintiff could not have filed their Motion for Conditional Certification during the time that the issue of intervention was being considered; indeed Plaintiffs eventually did just that, and filed their initial Motion for Conditional Certification on August 22, 2022, before the Court issued its Order allowing RUSCO to intervene. *See* Docs. 32, 44. Because

Plaintiffs did not exercise due diligence in preserving their right to seek conditional certification or request equitable tolling, the Court does not find such tolling to be appropriate from the time RUSCO filed its motion to intervene. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (explaining the general rule that courts are "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his [or her] legal rights.") (citation omitted); *see also Felps*, 460 F. Supp. 3d at 1239. Instead, the Court will equitably toll Plaintiffs' claims beginning September 2, 2022, the date the initial stay in this litigation was ordered.

2.  **Whether the Court Should Apply Equitable Tolling to the Time Beyond the Date the Stay Ended on July 31, 2023.**

Plaintiffs request equitable tolling beyond the date the stay of litigation ended in this case and up until the time the Court rules on Plaintiffs' second Motion for Conditional Certification and provides notice to potential opt-in Plaintiffs. Plaintiffs argue that they could not have acted with greater diligence as they filed their first Motion for Conditional Certification on August 22, 2022, prior to the entry of a scheduling order. Plaintiffs argue that "despite Plaintiffs' best efforts to move this case forward, no ruling on conditional certification has been issued as Plaintiffs were ordered to withdraw their previously filed Motion for Conditional Certification." Doc. 79 at 7.

Defendant again objects to this time frame and takes the position that equitable tolling should not be applied during this time because "Plaintiffs voluntarily withdrew their Motion for Conditional Certification on November 14, 2023" and did not file their renewed Motion for Conditional Certification until May 6, 2024. Doc. 87 at 2.

As an initial matter, the Court disagrees with Plaintiffs' characterization regarding the withdrawal of their initial Motion for Conditional Certification. A review of the transcript from the October 12, 2023, telephonic scheduling conference reveals that Judge Sweazea did not *order* Plaintiffs to do anything. Rather, obviously aware that RUSCO's Motion to Compel Arbitration

24

remained pending, Judge Sweazea asked whether Plaintiffs were going to withdraw their initial motion for conditional certification and file a new one.   Doc. 106   at 8 (10/12/23 Hearing Transcript).  Plaintiffs' counsel, Mr. Hesse, answered, "I think that's the plan, Judge." *Id*. Mr. Hesse then went on to explain that RUSCO's motion to compel had complicated the matter, but that Plaintiffs still believed there would be individuals left in the case even if the Court granted the motion to compel the RUSCO Plaintiffs' claims to arbitration. *Id*. Therefore, noted Mr. Hesse, "[W]e will withdraw the existing motion and refile it by the deadline set forth in the scheduling order." *Id*.

Notwithstanding Plaintiffs' misstatement regarding what occurred at the scheduling conference, the Court believes that, in the interest of justice, equitable tolling should be granted for a time extending beyond July 31, 2023, as Plaintiffs had filed their initial Motion for Conditional Certification on August 22, 2022, and that motion was still pending after the time the stay of the proceedings ended. It is true that, although they were not *ordered* to do so, Plaintiffs withdrew their initial Motion for Conditional Certification in November 2023. Doc. 66. But the decision to do so was not simply an unexplainable "strategic" decision on Plaintiffs' part, but rather a reasonable response to the September 22, 2023 filing of RUSCO's Motion to Compel the Arbitration of the four RUSCO Plaintiffs' claims in this case – the resolution of which would have an impact on the collective action for which Plaintiffs sought conditional certification. The briefing on RUSCO's Motion to Compel Arbitration was completed on November 3, 2023 (Doc. 64), but, six months later, the Court had still not decided the motion, likely prompting Plaintiffs to file their Motion for Equitable Tolling (Doc. 79) and their second Motion for Conditional Certification (Doc. 80), on May 3, and May 6, 2024, respectively. The Court determines that, under these circumstances, Plaintiffs did not fail to diligently pursue their rights or the rights of future opt-in

plaintiffs. The Court finds equitable tolling beyond the end of the stay in the proceedings appropriate.

### 3.  Whether Equitable Tolling Should Apply Beyond the Time Defendant Responded to Plaintiffs' Second Motion for Conditional Certification and Until the Time Notice Is Provided to the Potential Opt-in Plaintiffs.

Plaintiffs request that the Court protect the interest of absent potential class members by tolling the statute of limitations for all potential opt-ins until the time the Court authorizes notice to potential class members or issues an order denying conditional certification. Defendant opposes equitable tolling beyond September 18, 2024, the date it filed its Response to Plaintiffs' Motion for Conditional Certification but provides no specific legal argument on why equitable tolling should end with filing of that document.

The Tenth Circuit has not addressed whether tolling is appropriate during the period in which a court considers a motion for conditional certification. In *Abrams*, a decision from this federal district which both parties cite, the court held that "undue delay [approximately one year] arising from a court's deliberation on a motion for certification constitutes an extraordinary circumstance that merits tolling the statute of limitations." *Abrams,* 2014 WL 11497810, at *10. The court thus tolled the statute of limitations in that FLSA collective action until the time notice was issued to the putative plaintiffs. *Id*. at *12. Six years later, the court reaffirmed its holding in *Abrams*, determining that equitable tolling was warranted where there was a fourteen-month delay in deciding the plaintiffs' motion for conditional certification, again finding that the delay was beyond the control of plaintiffs and, by filing their motion, the plaintiffs had "diligently preserved their right to assert equitable tolling." *Felps*, 460 F. Supp. 3d at 1239. As noted in *Abrams*, other district courts have similarly determined that equitable tolling in such circumstances is appropriate. *See*, *e.g.*, *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 440, 445 (S.D.N.Y. 2012) (tolling

statute after five-month judicial delay); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-cv-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) ("The delay caused by the time for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine"); *Owens v. Bethlemen Mines Corp.*, 630 F. Supp. 309, 312 (S.D.W. Va. 1986) (tolling statute based on eighteen-month judicial delay).

The Court agrees with the holdings in *Abrams* and *Felps* and determines that the delay in ruling on a motion for certification of a FLSA collective action is an extraordinary circumstance beyond Plaintiffs' control which justifies equitable tolling. In this case, Plaintiffs filed their second Motion for Conditional Certification on May 6, 2024 – over ten months ago. The delay in resolving the motion can be attributed to two things – first, as was the case in *Abrams* and *Felps*, the motion has not previously been addressed due to the Court's perpetually busy docket; and second, at least some of the delay can be attributed to the Defendant's request to extend the time it had to respond to Plaintiffs' motion, which caused the briefing on certification to be delayed by approximately four months. *See* Doc. 81; Doc. 100. The Court determines that both occurrences constitute extraordinary circumstances beyond Plaintiffs' control which justify equitable tolling until the time notice is provided to members of the putative class. *See Stransky*, 868 F. Supp. 2d at 1182; *Abrams*, 2014 WL 11497810, at *12 .

## IV.
## CONCLUSION

In sum, the Court finds that Plaintiffs have made substantial allegations that they and other workers similarly situated performed uncompensated overtime work as a result of Defendant's policies. Therefore, the Court shall **GRANT** Plaintiffs' Motion for Conditional Certification (Doc. 80) and will conditionally certify the following class under 29 U.S.C. § 216(b):

> All Flowback Operators providing services to Defendant who were paid a day-rate and no overtime and who worked more than 40 hours in one or more individual workweeks in New Mexico beginning three years prior to March 18, 2025.

The Court will approve the proposed Notice to the putative class members once modified as described above. The Court will Order Plaintiffs to provide and file with the Court a revised Notice within ten (10) days of the date of this Order for final approval. Once the Court approves the final Notice, the parties may proceed under the timeline proposed in Doc. 80-7.

For the reasons stated above, the Court will also **GRANT**, in part, and **DENY**, in part, Plaintiffs' Motion for Equitable Tolling (Doc. 79) and will equitably toll the statute of limitations in this case from September 2, 2022, until the time the Court approves the modified Notice and authorizes final Notice to potential class members.

**IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE