IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA PALCZYNSKY, ET AL.,
*individually and on behalf of all class members and those similarly situated*,

      Plaintiffs,

      v.                                        No. 2:21-cv-01125-DHU-KRS

OIL PATCH GROUP, INC.

      Defendant,

RUSCO Operating, LLC,

      Intervenor.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Oil Patch Group, Inc. ("OPG") and Intervenor RUSCO Operating, LLC's ("RUSCO") Joint Motion for Certification for Interlocutory Appeal ("Motion"), filed on April 16, 2025. Doc. 116. On April 30, 2025, Plaintiffs responded in opposition. Doc. 122. The Court, after considering the parties' briefs, the record of the case, and applicable law, **DENIED** the Motion by oral ruling on June 17, 2025, and now issues this Memorandum Opinion and Order to more fully explain its decision.

**I.
BACKGROUND**

Litigation on this case has been extensive. The facts of the case have been addressed at length in previous Memorandum Opinions and Orders (Docs. 44, 98, 107, 111) and by the parties. Therefore, the Court need not restate at length the same here. This case arises from a lawsuit filed on November 23, 2021, by Plaintiffs Joshua Palczynsky and Alfredo Montes "individually and on behalf of all other non-exempt Flowback Operators" currently and formerly employed by OPG. Doc. 1 (Plaintiffs' Original Class/Collective Action Complaint). In their First Amended Complaint,

1

Plaintiffs alleged that OPG misclassified them, and other similarly situated employees, as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day or in that workweek. Doc. 5 ¶ 5.6. Plaintiffs allege that through this misclassification, OPG violated both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-19, et seq., by failing to pay Plaintiffs the statutorily required overtime compensation for all hours worked in excess of 40 hours. *Id.* ¶ 5.39.

The Court has issued several Memorandum Opinions and Orders since the beginning of this litigation. Of relevance, on July 31, 2023, the Court entered its Memorandum Opinion and Order, granting in part RUSCO's Motion to Intervene. Doc. 44. On September 22, 2023, RUSCO filed its Motion to Compel Arbitration. Doc. 51. In its motion, RUSCO requested that the claims of four individual Plaintiffs be ordered to proceed in arbitration because each of the Plaintiffs had agreed to arbitrate any disputes related to their work for RUSCO customers, including OPG, and not to participate in any class actions related to any such disputes. Doc. 51. At that time, neither RUSCO nor OPG identified any other individuals that had signed arbitration agreements. *See id.*

On August 19, 2024, the Court issued a Memorandum Opinion and Order, granting RUSCO's Motion to Compel Arbitration as to the four identified individuals. Doc. 98. On the docket remained Plaintiffs' Second Motion for Conditional Certification filed on May 06, 2024. Doc. 80. On September 18, 2024, Defendant filed a response requesting limits on the scope of the conditional class certification. Doc. 100 at 2. Among other arguments, Defendant requested that the Court exclude from receiving notice any individual employee of OPG that entered into an arbitration agreement. *Id.* at 11.

On March 18, 2025, the Court issued a Memorandum Opinion and Order granting Plaintiffs' Second Motion for Conditional Certification and authorizing notice to be sent to the proposed putative class members including those who may have signed arbitration agreements. Doc. 107. In its Order, the Court noted that "there is no indication that Defendant could, at this stage of the litigation, identify those with arbitration agreements, much less valid and enforceable ones." *Id.* at 15. On April 01, 2025, Defendant OPG and Intervenor RUSCO filed a Motion for Partial Reconsideration identifying – for the first time – 77 individuals who signed arbitration agreements, attaching some of those agreements, and requesting that notice not be sent to those 77 individuals. Doc. 111. On April 01, 2025, Plaintiffs filed a Response in opposition to the Motion for Partial Reconsideration and contesting the validity of those agreements. Doc. 113.

On April 16, 2025, the Court denied the Motion for Partial Reconsideration, finding that neither the Defendant nor Intervenor identified any intervening change in controlling law, new evidence not previously available, or a clear error warranting reconsideration. Doc. 114. Rather, the Court observed that Defendant and Intervenor submitted information and arbitration agreements that were previously available to the Intervenor and could have been raised earlier, during the certification process. *Id.* at 3.

On April 16, 2025, following the denial of the Motion for Partial Reconsideration, Defendant and Intervenor filed the instant Joint Motion for Certificate of Appealability ("Motion"). Doc. 116. In their Motion, Defendant and Intervenor urge the Court to exercise its discretion under 28 U.S.C. § 1292(b) to certify for immediate review the "issue of whether notice is appropriate for putative class members who have signed arbitration agreements." *See generally* Doc. 116. Plaintiffs oppose the Motion. Doc. 122.

## II.
## LEGAL STANDARD

Under 28 U.S.C. § 1291, federal appellate courts have jurisdiction to hear appeals solely from the "final decisions" of district courts. *See* 28 U.S.C. § 1291; *Johnson v. Jones*, 515 U.S. 304, 309 (1995). This rule is supplemented by 28 U.S.C. § 1292(b), which permits a party to petition the Court to certify certain orders for interlocutory appeal. *See* 28 U.S.C. § 1292(b). Under that provision,

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

*Id.* Said differently, a trial judge may find that a civil action may qualify for an interlocutory appeal if (1) it involves a controlling question of law; (2) there is a substantial ground for difference of opinion; and (3) it materially advances the litigation's ultimate termination. 28 U.S.C. § 1292(b). District courts have discretion to determine whether to certify an order for interlocutory appeal. *See Swint v. Chambers Cnty Comm'n*, 514 U.S. 35, 47 (1995). Interlocutory appeals, however, are traditionally disfavored. *See Gelder v. Coxcom Inc.*, 696 F.3d 966, 969 (10th Cir. 2012) (citing *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009)). Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for "exceptional" cases. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74, (1996).

## III.
## DISCUSSION

**A. The Court finds that Defendant and Intervenor have not shown the existence of a controlling question of law.**

Generally, a question of law involves the meaning of a statutory or constitutional provision, regulation, or common law doctrine, as opposed to a particular application of law to facts. *See*

4

*Mayer v. Bernalillo Cnty.*, No. CV 18-0666 JB\SCY, 2018 WL 6594231, at *31 (D.N.M. Dec. 13, 2018) (citing *Certain Underwriters at Lloyd's, London, Subscribing to Policy Number 501/NM03ACMB v. Nance*, 2006 WL 4109675, at *3 ("The phrase 'question of law' as used in 28 U.S.C. § 1292(b) does not refer to a particular application of facts to the law, but rather 'has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine.'" (quoting 28 U.S.C. § 1292(b))). A question of law is "controlling" if its resolution has the potential for substantially speeding up the disposition of the litigation. *Slusser, v. The Mountain West Conference,* No. 1:24-CV-03155-SKC-MDB, 2025 WL 1265874, at *2 (D. Colo. May 1, 2025). A "legal issue need not be dispositive to be controlling, but it must at least materially affect the outcome of the case." *XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1193–94 (D.N.M. 2016) (citing *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002)).

Defendant and Intervenor submit that the request for certification order involves a controlling question of law because the resolution of who will be notified of the lawsuit will have a great effect on the course of litigation by determining how many plaintiffs join the collective action. Doc. 116 at 3. The Court finds that the question whether notice should be provided to putative class members who have signed arbitration agreements does not present a controlling question of law. Although the number of potential class members is important, resolving that number at this stage is not "controlling" within the meaning of 28 U.S.C. § 1292(b), because it does not affect or speed up the progress of the litigation. To the extent there is any litigation concerning the validity or enforceability of any of the 77 arbitration agreements identified by Defendants, the Court sees no reason why that litigation cannot occur while the proceedings continue. The Court is also not persuaded that determining resolution of notice to the 77 class members will materially affect the outcome of the case. Unlike cases where the class size is

uncertain or the potential class members are difficult to identify, the individuals at issue here are known and ascertainable. The trial in this matter will either include some or all of the 77 individuals at issue, or some or all of those individuals will be excluded from further participating in the litigation if and when Defendant proves the arbitration agreements are valid and enforceable contracts.

Therefore, the Court finds the issue is not controlling and does not justify interlocutory review.

**B. The Court finds that substantial ground for difference of opinion is not present here.**

The next query is whether the issue presents a substantial ground for difference of opinion. Defendant and Intervenor submit that a difference of opinion exists because the Fifth Circuit and Seventh Circuit have concluded that notice should not be sent to prospective class members who signed arbitration agreements, *see In re JPMorgan Chase & Co.*, 916 F.3d 494, 503–05 (5th Cir. 2019) and *Bigger v. Facebook*, 947 F.3d 1043, 1050 (7th Cir. 2020), while district courts within this circuit that have found the validity of notifying putative class members who have signed arbitration agreements. *See Pogue v. Chisholm Energy Operating*, LLC, No. 2:20-CV-00580-KWR-KK, 2021 WL 5861184 (D.N.M. Dec. 10, 2021); *Beattie v. TTEC Healthcare Sols., Inc.*, No. 1:18-CV-03098-RM-NRN, 2019 WL 2866559 (D. Colo. July 3, 2019)). Defendant and Intervenor assert that these are contradictory findings amounting to a difference of opinion between the circuits.

The Court is not persuaded by this argument. Contrary to Defendant and Intervenor's assertion, these cases do not present a genuine dispute or difference of opinion between the circuits because the Tenth Circuit Court of Appeals has declined to address the issue. *See Palczynsky v. Oil Patch Grp., Inc.*, No. 2:21-cv-01125-DHU-KRS, 2025 U.S. Dist. LEXIS 50553, at **23-24

(D.N.M. Mar. 18, 2025); *see also, In re KeyPoint Gov't Sols., Inc.*, No. 19-1172, 2019 U.S. App. LEXIS 27706, at *1-3 (10th Cir. Jun. 11, 2019) (declining to address this issue). In addition, as previously explained by this Court, the Fifth Circuit's opinion in *JPMorgan Chase* presented a dissimilar case because the plaintiffs there did not contest that employees had signed agreements containing class and collective action waivers and did not intend to contest the validity or enforceability of those agreements. *See JPMorgan Chase & Co.*, 916 F.3d at 498. Therefore, it is not surprising that the circuit court held there should be no notice to those who had signed these admittedly valid and binding agreements precluding them from participating in the litigation. *See id*. As to the Seventh Circuit case relied on by Defendants, although the circuit court explained that, "The court may not authorize notice to any employee whom the employer shows entered a valid arbitration agreement, unless the record reveals that nothing in the agreement would prohibit that employee from participating in the action," *Facebook*, 947 F.3d at 1050, the court also acknowledged that "[t]he employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a *valid* arbitration agreement for each employee it seeks to exclude from receiving notice." *Id.* (emphasis added).

      The holdings in *In re JPMorgan* and *Facebook* are not at all at odds with the decision of this Court or any of the district courts in the Tenth Circuit who have addressed the issue, they just present different factual scenarios. In this case, for instance, Plaintiffs have not conceded the validity or the enforceability of any of the arbitration agreements belatedly identified by Defendants, unlike the plaintiffs in *In re JPMorgan*. As to the applicability of the holding in *Facebook*, the reason that this Court determined that withholding notice to the 77 individuals belatedly identified by Defendants as having arbitration agreements would be inappropriate is because Defendant have not shown that these agreements would be valid and enforceable under

7

New Mexico law. *See, e.g., Peavy by Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 11, 470 P.3d 218, 221–22 (explaining that, under New Mexico law, arbitration agreements may be invalidated under theories of substantive or procedural unconscionability).

The Court is not persuaded by Defendants' attempt to characterize this issue as constituting a difference of opinion between the circuits.

### C. It does not appear that an appeal would materially advance the ultimate termination of the litigation.

Finally, the Court must address whether certification will materially advance the ultimate termination of the litigation. "An immediate appeal advances termination if it would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *XTO Energy, Inc.*, 189 F. Supp. 3d at 1195. Generally, an appeal does not materially advance the ultimate termination of litigation when the litigation will be conducted in the same manner regardless of the court's decision. *Id.*

Defendant and Intervenor argue that an interlocutory appeal would simplify trial and make discovery simpler and less costly by reducing the number of plaintiffs in the collective action. They argue that if notice goes out to the 77 workers who signed arbitration agreements with RUSCO, this litigation will be significantly delayed by motions practice related to the 77 putative class members, including anticipated motions to compel arbitration. The Court is unpersuaded. First, Defendants have not shown that resolution of this issue would eliminate the need for trial. Second, denying notice to putative collective action members just because they signed arbitration agreements does not guarantee the simplification of issues in this case because Plaintiffs contest the validity of those agreements, and that issue must be resolved regardless of who is included in the notice. Third, the fact that litigation may be required after, rather than before the notice is sent to all putative collective action members is a problem of the Defendants' own making. As

8

mentioned earlier, RUSCO was allowed to intervene in this case almost two years ago, on July 31, 2023, and neither RUSCO nor OPG advised the Court at that time that there were more than four individuals who had entered into arbitration agreements. In fact, Defendants did not provide the additional arbitration agreements until April 01, 2025. Had those agreements been timely presented earlier in the proceedings, the issue may have been addressed more efficiently.

In sum, the Court concludes that, in the broader context of the litigation, an immediate appeal would more likely delay, rather than advance and simplify, the ultimate resolution of the case.

## IV.
## CONCLUSION

For the reasons stated above, the Court finds that Defendant and Intervenor have not carried their burden of demonstrating that the requested appeal presents the extraordinary case where certification would be appropriate under Section 1292(b). Accordingly, the Court **DENIES** Defendant and Intervenor's Motion to Certify Orders for Interlocutory Appeal (Doc. 116).

**IT IS SO ORDERED**.

_____
DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE