## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSHUA PALCZYNSKY, *et al.*,      )
individually and on behalf of all class    )
members and those similarly situated,   )
                                    )
      Plaintiffs,           )     2:21-cv-1125-DHU-KRS
                                      )
v.                            )     Class and Collective Action
                                      )
OIL PATCH GROUP, INC.,       )
                                    )
      Defendant.         )

## <u>ORDER</u>

Currently before the Court is the "Second Motion to Compel and to Determine Sufficiency" (Motion), filed by Defendant Oil Patch Group, Inc. (OPG). *See* (Doc. 190). A hearing on the Motion was held on May 13, 2026. Immediately prior to the hearing, counsel for OPG informed the Court that all but three of the issues raised by the Motion had been resolved. Counsel confirmed at the hearing that the two unresolved discovery issues were: (1) whether Plaintiffs' "cut-and-paste" interrogatory responses violate a court order that required Plaintiffs to serve "individual" responses rather than a single joint response; and (2) whether Plaintiffs should be compelled to produce their tax returns. The third unresolved issue is whether OPG is entitled to recover its fees and costs under FED. R. CIV. P. 37(b)(2)(C). At the May 13 hearing, the Court entertained oral argument on the remaining issues, after which the Court ruled from the bench that the Motion would be granted in part and denied in part. *See* (Doc. 206). The following discussion summarizes and expands on that ruling.

<u>**"Individual" Interrogatory Responses**</u>

OPG previously filed a motion to compel in which it sought, among other things, to compel all named and opt-in plaintiffs to respond individually to OPG's interrogatories. *See* (Doc. 178 (First Motion To Compel)). The Court granted the request, directing each named Plaintiff and each opt-in Plaintiff to serve individual responses to OPG's interrogatories within thirty (30) days of entry of the order. *See* (Doc. 185 (Previous Order)). OPG then filed the present Motion, in which it argues that, although Plaintiffs submitted "*individual sets* of interrogatory answers," they did not comply with the Court's Previous Order because they did not provide "*individualized* answers." (Doc. 196 at 2 (emphasis in original)). The answers are not "individualized," according to OPG, because "multiple interrogatory answers were recycled across numerous Plaintiffs," giving "good reason to question their authenticity." (Doc. 190 at 5). "By way of example" (*id.*), OPG refers the Court to Interrogatories 12 and 13:

Interrogatory 12 asks each Plaintiff to "[d]escribe in reasonable detail your day-to-day duties as a Flowback Operator on behalf of OPG from September 2, 2019 through September 2, 2022." (Doc. 191-6 at 2). The description given by the six Plaintiffs whose responses are attached to the Motion[1] is exactly the same:

> ANSWER: Plaintiff was instructed to wear OPG branded stickers on his hard hat, conduct and/or attend daily safety meetings with the OPG customers, filled out a daily JSA form, and performed tasks expected of a Flowback Operator during the day and night.

(*Id.* at 1-3 (Justin Fleming); *id.* at 4-6 (Josh Fleming); *id.* at 10-12 (Dustin Hanway); *id.* at 13-14 (Shawn Haxtin); *id.* at 16-17 (John Campbell); *id.* at 19-21 (Thomas Russell)).

---

[1] *See* note 10, *infra*.

Interrogatory 13 asks each Plaintiff to describe the "duration and nature" of their engagement as a "Flowback Operater," including start and end dates of employment and any break, vacation, or leave of absence, as well as "the manner in which each engagement was initiated, extended, or renewed (e.g., pursuant to a fixed-term written contract, an oral agreement, or a project-by project arrangement)." (*Id.* at 6). Each of the six Plaintiffs whose responses are attached to the Motion answered the same, including each making the same typographical error:

> ANSWER: Plaintiff worked when OPG told him to work. Plaintiff went home when OPG told in a good [sic]. The dates and periods of work and nonwork varied. Plaintiff is not aware of any start and end dates of any break, vacation, leave of absence, or other hiatus but Plaintiff's invoices will show when he worked.

(*Id.* at 1-3 (Justin Fleming); *id.* at 4-6 (Josh Fleming); *id.* at 10-12 (Dustin Hanway); *id.* at 13-15 (Shawn Haxtin); *id.* at 16-18 (John Campbell); *id.* at 19-21 (Thomas Russell)).

A case raising a similar issue, albeit on a much larger scale, is *Zone Five, LLC v. Textron Aviation, Inc.*, No. 20-1059-DDC-KGG, 2023 WL 5206046 (D. Kan. Aug. 14, 2023) (*Zone Five I*), *report and recommendation accepted in part, rejected in relevant part, and modified in part*, No. 20-1059-DDC-RES, 2023 WL 8540335 (D. Kan. Dec. 11, 2023) (*Zone Five II*). The defendant served individual sets of interrogatories on each of the 700+ plaintiffs. *Id.* at *1, *9.[2] The plaintiffs initially responded with a single "global response … that attempted to answer on behalf of all Plaintiffs." *Id.* at *9. The defendant demanded that the plaintiffs respond individually. After they did so, the defendant moved to compel, arguing, much like OPG here, that the individual responses were another attempt by the plaintiffs "to skirt" their duty to respond individually, and that the responses were "clearly lawyer-drafted and copied-and-pasted across all [the] [p]laintiffs." *Id.*

---

[2] The case was not brought as a class action; the plaintiffs had chosen to bring individual claims joined in a single proceeding.

Also like OPG here, the defendant pointed to the duplicative responses to argue that the plaintiffs "ma[d]e no attempt to fully answer the questions." *Id.* After examining two specific interrogatories, the Magistrate Judge assigned to handle the discovery dispute granted the defendant's motion to compel,[3] agreeing with the defendants that the "copy-and-paste responses confirm that [the] [p]laintiffs are not taking seriously their duty to respond to discovery as *individuals*." *Id.* at *11 (emphasis in original). The Magistrate Judge's ruling, however, was overturned by the district court upon the plaintiffs' filing of objections. *See Zone Five II,* 2023 WL 8540335, at *25-27. As the district court explained, the issue "comes down to whether a party can use a template to respond to discovery requests." *Id.* at *26. The court concluded there was nothing "inherently inadequate" with cut-and-paste responses, further stating that, "[i]n the court's experience, litigants sometimes use others' discovery responses as templates." *Id.* at *26, *27 n.12.[4]

This Court reaches a similar conclusion on OPG's argument that the Court can declare all interrogatory responses deficient based on duplicative language. The Court cannot say that cut-and-paste interrogatory responses are always improper, or that they necessarily mean Plaintiffs

---

[3] The Magistrate Judge also recommended that the plaintiffs be penalized for their cut-and-paste interrogatory responses by having their claims dismissed. *Zone Five I*, 2023 WL 5206046, at *11. Later in the report and recommendation, the Magistrate Judge clarified that this recommendation applied only to plaintiffs who had provided copy and paste responses—not every single plaintiff. *Id.* at *14.

[4] The characterization of the cut-and-paste responses as a "template" initially came from the plaintiffs' counsel, who had "admit[ted] that the [duplicative] language is a cut-&-pasted 'template' response provided by Plaintiffs' counsel to Plaintiffs instructing and guiding them on how to respond." *Zone Five I*, 2023 WL 5206046, at *11. The defendant argued "that [the] plaintiffs used templates unethically to skirt their obligations to answer discovery individually," and "even amp[ed] the rhetoric another notch, calling [the] plaintiffs' use of this tactic 'just shy of fraud.'" *Zone Five II*, 2023 WL 8540335, at *26. The plaintiffs responded that the use of "templates" "is 'normal' and 'critical to accommodate the challenge of numerosity presented'" in the case. *Id.* The district court responded to these arguments by stating that, "[u]nfortunately, neither party has cited any law to support their many opinions." *Id.* at *26. The court went on to lament that the defendant had brought "substantial discovery questions to the court's attention," and was requesting the court to "take action against hundreds of plaintiffs with little more than "unhelpful rhetoric" and "a few examples. Meanwhile, [the] plaintiffs assert they've done nothing wrong and that they're dealing with the realities of this case as best they can. No wonder the Magistrate Judge lost patience with the case's discovery record." *Id.*

4

failed to provide proper individual responses. OPG makes an additional argument in this case that the duplicative interrogatory answers violate the Court's Previous Order. But it is difficult to read the Court's Previous Order as requiring anything more than compliance with the procedural requirement found in the "Instruction and Definitions" section of OPG's discovery requests that each Plaintiff "must individually respond to each [discovery request] …. [and] serve a separate set of written answers. Joint, combined, or representative answers are not acceptable." (Doc. 178-3 at 5 (¶ 19)).[5] Furthermore, the dispute over individual interrogatory responses in the First Motion to Compel focused on language in the Scheduling Order, which Plaintiffs contended limited OPG to 25 total interrogatories *across all* Plaintiffs, rather than 25 *per* Plaintiff. Although the Court pointed to OPG's need for individualized evidence as a rationale for its ruling expanding the number of interrogatories to 25 per Plaintiff,[6] the Previous Order related only to the *procedural* requirement that each Plaintiff serve individual responses to the interrogatories, as opposed to a single joint response. The Court did not have before it the question of whether identical responses by multiple Plaintiffs was prohibited.

OPG argues that the use of duplicative responses in individual interrogatory responses "smacks of gamesmanship." (Doc. 196 at 2 (emphasis in original omitted)). No doubt there is some truth to that. Clearly, Plaintiffs took advantage of a loophole in the First Motion to Compel and the Previous Order. But the Court cannot say that, in doing so, they violated the Previous Order. Nor can the Court say that duplicative responses in individual interrogatories automatically mean

---

[5] The excerpted language was called to the Court's attention on the First Motion to Compel by OPG quoting it in its opening brief. *See* (Doc. 178 at 2).

[6] The Court observed at the hearing on the First Motion to Compel that, in order to disprove Plaintiffs' contention that the requirements for a class or collective action have been met, OPG needs evidence of differences among the class members, which means it is entitled to individualized evidence concerning each named and opt-in Plaintiff. (Doc. 184 at 1-2).

that the responses transgress some undefined concept of being "individualized." Apparently, OPG assumed (perhaps naively, but not without good cause) that correcting a procedural deficiency with an order directing that Plaintiffs file individual responses would also fix the substantive deficiencies in Plaintiffs' joint response. That did not happen, so OPG is now searching—again, understandably—for some path to short-circuit the normal route to remedying those substantive deficiencies. The path it has settled on is a global ruling that would apply to Plaintiffs' interrogatory response across-the-board, thereby eliminating the need to examine those responses one-by-one for sufficiency. The defendant in *Zone Five* convinced the Magistrate Judge to adopt a similar approach. But that case involved over 700 individual plaintiffs,[7] whereas this case involves somewhere between six and fifteen.[8] And in any event the Magistrate Judge's ruling was ultimately overruled by the district court.

By focusing almost exclusively on the mechanical aspect of Plaintiffs having "recycled" the same answer across numerous "individualized" responses, OPG for the most part has failed to properly raise the issue of whether the duplicative responses at issue are substantively deficient.[9]

---

[7] In the *Zone Five* case, the plaintiffs argued that the defendant "ha[d] improperly 'tried to lump the majority of [the] [p]laintiffs into a category of deficient responders and fail[ed] to even identify the responses it claims to be deficient,' as [the] [d]efendant cited to only one allegedly deficient response." *Zone Five I,* 2023 WL 5206046, at *7. The Magistrate Judge cited a local rule that required discovery-related motions to be accompanied by copies of the discovery requests at issue, but then said that, [i]n this instance, … the Court finds the approach taken by [the] [d]efendant to be both efficient and common-sensical as it would be impractical or the Court to review" all the responses at issue. *Id.*

[8] The parties have reported in the recent past that there are around fourteen or fifteen named and opt-in plaintiffs whose claims remain at issue because they have not agreed to arbitration. *See* (Doc. 184). The Motion states that the Previous Order was directed at "12 Opt-in Plaintiffs." (Doc. 190 at 1). (On its face, the Previous Order is directed at all Plaintiffs who were served with OPG's interrogatories.) And the present Motion appears to seek relief regarding only six plaintiffs. *See* note 10 *infra.*

[9] OPG raised the issue of the substantive deficiency of the responses really for the first time at the hearing on the Motion, with OPG's counsel arguing that the responses are vague and incomplete, that they do not actually address the substance of the interrogatories, and that none contained specific facts concerning each responding Plaintiff. OPG's counsel specifically cited to Interrogatory 10 as an example. Interrogatory 10 asks that Plaintiffs provide information about how and what they were paid. At least six Plaintiffs gave the same answer—that they were "paid a day rate by direct deposit," and that OPG's pay records would show the other information requested by the interrogatory. *See* (Doc. 191-2 at 1). Plaintiffs' counsel responded during the motion hearing by arguing that Plaintiffs do not have to

6

The Court will consider that issue as Interrogatories 12 and 13 only, because they are the only two interrogatories OPG specifically discusses in the briefing. Concerning those two interrogatories, the Court cannot say on the current record that the cut-and-paste responses of the six Plaintiffs at issue[10] are deficient. Federal Rule of Civil Procedure 37(a)(4) provides that an "evasive or incomplete disclosure, answer, or response" to a discovery request "must be treated as a failure to

---

provide specific facts in response to Interrogatory 10 because the information has already been produced. As the Court discusses in this Order, there are only two Interrogatories the substantive sufficiency of which the Court is able to address based on the present Motion, and Interrogatory 10 is not one of them. Nevertheless, because it was raised at the hearing, and for the purpose of trying to prevent future motions to compel, the Court will comment on the matter. Counsel's assertion that the information has been produced elsewhere is not part of Plaintiffs' duplicative responses, and therefore might not be something Plaintiffs can argue at this point. Moreover, it's not clear what Plaintiffs' counsel meant when she said "the information has already been produced." And what she meant matters to whether such a response would be adequate if it were not waived. "[A] responding party may not answer an interrogatory by directing the party propounding the interrogatory to find answers from previously produced documents unless doing so complies with Rule 33(d), and the response indicates with specificity where the information can be found." *Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 501 (D. Kan. 2006). Here, the cut-and-past responses do not point to either other discovery responses where the information can be found, or specific documents containing the information. They therefore do not satisfy the specificity requirement. *See, e.g., JH Brown Enters. v. Am. Guarantee & Liab. Ins. Co.*, No. 8:21-CV-2020-TPB-SPF, 2022 WL 19919878, at *3 (M.D. Fla. Mar. 30, 2022) ("Merely referencing an insurance company's claim file with no specificity as to where the information may be found in that file does not satisfy Rule 33(d)."). And the Court also doubts Plaintiffs can satisfy the requirements of Rule 33(d), as that rule only gives a responding party the option of specifying records that contain the answer to an interrogatory if the records in question are records of the *responding party*. *See Firstcom, Inc. v. Qwest Corp.*, No. CV 04-0995(ADM/JJG), 2006 WL 8443647, at *3 (D. Minn. Feb. 16, 2006). The records Plaintiffs' response points to are *OPG's* pay records. Finally, if Plaintiff's counsel was just making a general argument that discovery requests are unduly burdensome if they ask for information the requesting party already knows, that argument too would have to be rejected. Again, no such objection was made in Plaintiffs' response to Interrogatory 10. More importantly, it is "beside the point" that a party "may already know the facts[,] … as the object of contention interrogatories is to learn what the opposing party will argue at trial, rather than to obtain facts." *Former S'holders of Cardiospectra, Inc. v. Volcano Corp.*, No. 12-CV-01535-WHO, 2013 WL 5513275, at *2 (N.D. Cal. Oct. 4, 2013); *see also Bouto v. Guevara*, No. 19-CV-2441, 2020 WL 4437669, at *2 (N.D. Ill. Aug. 3, 2020) ("The entire purpose of interrogatories is to get opposing parties to identify a specific subset of evidentiary support for their claims and defenses."). If Plaintiffs need to refer to OPG's pay records because they do not know the answer, then they should simply say so. *See Cruz v. Guevara*, No. 23 C 4268, 2024 WL 5442747, at *5 (N.D. Ill. Nov. 22, 2024) ("It's as if to say, 'you know what you did' and puts the burden of proof on the defendants. … If the plaintiff doesn't know an answer, he should simply say so. If the plaintiff doesn't have any evidence regarding an answer at this point, he should simply say so." (internal citations omitted)).

[10] The Motion seeks an order "[c]ompelling *each individual Plaintiff*" (Doc. 196 at 7) without identifying those individuals. This case has involved a revolving door of plaintiffs, with both named plaintiffs and opt-in plaintiffs being dismissed (voluntarily and involuntarily), and others essentially dropping out (even if not yet formally) to arbitrate their claims. OPG has not clearly explained to the Court which Plaintiffs and which interrogatory responses are the ones for which it seeks relief. But it has attached to the Motion the interrogatory responses of only six Plaintiffs, which begs the question whether the other 6-8 plaintiffs presumably still in the case, *see* note 8, *supra*, also used the same "cut-and paste" responses? In short, the Court does not think the present Motion properly raises the issue of the sufficiency of any interrogatory responses other than those of the six Plaintiffs whose responses were submitted with the Motion and other than with regard to the two interrogatories discussed in the Motion.

7

disclose, answer, or respond," and Federal Rule of Civil Procedure 33(b)(3) provides that the responding party "must, to the extent it is not objected to," answer "[e]ach interrogatory ... separately and fully in writing under oath." Although the cut-and-paste responses to Interrogatories 12 and 13 provide "minimal" facts, and are "admittedly disappointing" to OPG, *Heuskin v. D&E Transp., LLC*, No. CV 19-957 MV/GBW, 2020 WL 1450575, at *4 (D.N.M. Mar. 25, 2020), the Court cannot say that they violate the above standards.[11]

In sum, the Court will allow Plaintiffs to stand on their responses to Interrogatories 12 and 13 as submitted if they wish to do so, and will require OPG to seek additional factual details through other means, such as by deposing the plaintiffs in question. *See, e.g., Meltzer/Austin Rest. Corp. v. Benihana Nat. Corp.,* No. A-11-CV-542-LY, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (citing *Essex Ins. Co. v. Interstate Fire & Safety Equip. Co./Interstate Fire & Safety Cleaning Co.*, 263 F.R.D. 72, 75 (D. Conn. 2009) ("One important purpose of interrogatories is to obtain information necessary to use other discovery devices effectively, including identifying witnesses whose depositions should be taken ...." (internal quotations and citations omitted))). That being said, if it is true, as OPG suggests, that the cut-and-paste responses are inaccurate as to certain Plaintiffs, then that is a "genuine and material problem." *Zone Five II*, 2023 WL 8540335, at *26 n.11. OPG's concerns that the duplicative responses included factual inaccuracies were mostly expressed during OPG's meet-and-confers with opposing counsel,[12] and were rightly

---

[11] In *Zone Five II*, the defendant argued, as OPG does here, that the plaintiffs' identical responses to two interrogatories discussed in the opinion were deficient. But the court rejected that argument, stating that "the court credits" the plaintiffs' assertion that the responses were the same because the facts were the same as to each plaintiff. *Zone Five II*, 2023 WL 8540335, at *26. Plaintiffs did not address the substantive sufficiency of either Interrogatory 12 or 13 in their response brief, and the Cout cannot say that their failure to do so is a waiver given the manner in which the issue was presented in the Motion. But presumably if they had responded on the issue, they would have said the same thing as the plaintiffs in *Zone Five II*, and the Court would rule in the same way as that court did.

[12] OPG's counsel told Plaintiffs' counsel that it had produced pay records that show "at least 3" of the opt-in Plaintiffs whose interrogatory responses are attached to the Motion "were not paid the day rate," contrary to those Plaintiffs' response to Interrogatory 10 that "Plaintiff was paid a day rate by direct deposit." (Doc. 191-2 at 1). OPG also asserted as a factual matter that one of the six Plaintiffs in question was "not a Flowback Operator," and another has "admitted

omitted from the Motion, as "[a] motion to compel is not the proper way to argue about the factual accuracy of a party's response." *Brown v. Mohr*, No. 2:13-CV-0006, 2017 WL 2832631, at *3 (S.D. Ohio June 30, 2017), *aff'd*, No. 2:13-CV-06, 2017 WL 10056799 (S.D. Ohio Nov. 6, 2017). Therefore, the issue "isn't before the court." *Zone Five II*, 2023 WL 8540335, at *26 n.11 (where the defendant asserted "that depositions have shown that [the plaintiffs'] copy and paste responses are false"). Nevertheless, Plaintiffs are forewarned that the Court will consider sanctions— including fees and costs, or even dismissal—against them and their counsel if any of their duplicative responses are later shown to be false or inaccurate and Plaintiffs failed to correct them in a timely manner. *See id.* at *27 n.12.

Accordingly, the Motion is denied on the issue of duplicative interrogatory responses, although the denial is without prejudice. The Court also admonishes Plaintiffs to take seriously their discovery responsibilities, including responding fully and fairly to individually propounded discovery with individually focused responses.

### Tax Returns

The second unresolved discovery dispute between the parties is whether Plaintiffs should be required to produce complete copies of their federal and state income tax returns for the tax years 2019 through 2022 ("look back" period). "Although income tax returns are not inherently privileged, courts are typically reluctant to compel their disclosure because of both 'the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete and accurate returns.'" *Uto v. Job Site Servs. Inc.*, 269 F.R.D. 209, 212 (E.D.N.Y. 2010) (quoting *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y. 1979)), *objections*

---

that he did not work for OPG during the lookback period," despite the fact that the cut-and-paste response those Plaintiffs gave to Interrogatory No. 12 purported to describe their "day-to-day duties *as a Flowback Operator*" in the 2019 through 2022 "look back" period. *Id.* (emphasis added)*; see, e.g.*, (Doc. 191-6 at 2)*.

*overruled sub nom. Paulino Uto v. Job Site Servs., Inc.*, No. CV-10-0529(SJF)(ETB), 2010 WL 11632756 (E.D.N.Y. Dec. 14, 2010). Courts in the Tenth Circuit have referred to these concerns as "a public policy against the unnecessary disclosure of income tax returns." *Hawkins v. S. Plains Int'l Trucks, Inc.*, 139 F.R.D. 679, 681–82 (D. Colo. 1991). Plaintiffs argue here that their tax returns are not relevant except as to the issue of whether they took business deductions, which they have already admitted they took. They argue that, if further information is needed concerning the business deductions that were taken, there are less intrusive means of obtaining that information than seeking the wholesale production of all tax returns filed over the course of a four-year period.

Tax returns may have varying degrees of relevance in FLSA cases, depending on the issues that are in dispute. For instance, in *Solis v. Crescent Drilling & Prod., Inc.*, No. SA-19-CV-01194-FB, 2020 WL 8509909, at *2 (W.D. Tex. Dec. 9, 2020), the court found that a request to produce tax returns was "relevant and proportional to the needs of the case under Fifth Circuit precedent interpreting the economic realities test" for evaluating whether a worker is an employee or independent contractor. A similar finding was made in *Saravia v. Dynamex, Inc.*, No. C 14-05003 WHA, 2016 WL 4140509, at *3 (N.D. Cal. Aug. 4, 2016), where the court said that requiring the production of tax returns was "a reasonable burden on prosecuting a claim for money— namely responding to … reasonable discovery… that plausibly will show some opt-ins want it both ways, that is, they want to cash in on any settlement herein as if they were 'employees' while telling the IRS that they were themselves 'employers' entitled to deductions."

In *Lewis v. Shafer Project Resources, Inc.*, No. 2:19-CV-353, 2021 WL 827137, at *1 (S.D. Tex. Mar. 4, 2021), the plaintiff argued "that this is not an independent contractor case, distinguishing it from the context in which other FLSA cases have required the production of income tax returns for the purpose of applying the economic realities test." But the Magistrate

Judge still granted the defendant's motion to compel, "finding that the tax returns [were] relevant to [the plaintiff's] credibility and to his damages, specifically referencing whether [the plaintiff] actually could have worked the overtime hours he claim[ed] and whether expense reimbursements should be considered in calculating the regular rate of pay." *Id.* In *Harper v. FirstKey Homes, LLC*, No. 3:25-CV-642-L-BW, 2026 WL 114926 (N.D. Tex. Jan. 15, 2026), the defendant argued that the plaintiffs should have to produce tax returns because they would show if the plaintiffs were performing work for other employers when employed by the defendant, which would "make[] it less likely that a plaintiff would be also performing unpaid overtime work for [the defendant]." *Id.* at *4. Although finding that the information sought was relevant, the court denied the motion to compel without prejudice to reconsidering it on full merits discovery, reasoning that the returns might show the *value* of the work performed for the other employer but would not show the *amount* of work. *Id.*

The Court disagrees generally with arguments that speak more to the persuasive value of the evidence rather than the issue of relevance, as those arguments go to admissibility rather than discoverability. *See Centurion Indus., Inc. v. Warren Steurer & Assoc.,* 665 F.2d 323, 326 (10th Cir. 1981) (stating that "relevancy is construed more broadly during discovery than at trial"). For instance, the *Harper* court's "value" versus "amount" argument does not mean the tax returns are irrelevant, as the total value of work performed for an hourly wage earner usually bears a direct relationship to the amount of hours worked.[13] In addition, although Plaintiffs state that they never

---

[13] Another example is the argument that "[w]hat a Plaintiff put on his or her individual tax return is between the individual, their accountant, and the IRS. And regardless of what a Plaintiff may or may not have put down on their taxes does not absolve Defendants of their obligation to pay an employee appropriate wages under the FLSA." *Edwards v. PJ Ops Idaho, LLC*, No. 1:17-CV-00283-DCN, 2020 WL 7502452, at *9 (D. Idaho Dec. 21, 2020); *Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095296, at *4 (D. Colo. Nov. 25, 2024). And another example is Plaintiffs' counsel's argument at the motion hearing that the fact that an employee might not have filed his state taxes in New Mexico does not prove that he did not work in New Mexico. What state a person files their taxes in may not "prove" that the person worked in that state, but it does provide an indication, i.e., evidence, that he did.

worked for employers other than OPG in the relevant period, OPG does not have to take Plaintiffs' word, even if provided by sworn testimony. A federal income tax return carries more weight than Plaintiffs' sworn testimony because it is filed under penalty of perjury and the filing of a false return may subject the filer to criminal penalties. OPG is entitled to confirm or disprove Plaintiffs' testimony by examining their tax returns. The Court also agrees with the decision in *Rafeedie v. L.L.C., Inc.*, No. A-10-CA-743 LY, 2011 WL 5352826 (W.D. Tex. Nov. 7, 2011), which pointed out that the plaintiffs' privacy concerns could be addressed by appropriately designating materials for limited disclosure pursuant to a protective order. *Id.* at *2 (rejecting the plaintiffs' argument that relevant information the defendant sought from their tax returns could "be obtained by way of interrogatories asking about their sources of income and their stipulation that they considered themselves self-employed for income tax purposes"). The parties have already entered into an agreed protective order in this case, *see* (Doc. 172), and the Court orders that the tax returns be produced pursuant to that order.

In sum, the Court finds that Plaintiffs' tax returns are relevant and that requiring their production is neither unduly burdensome nor disproportionate to the needs of the case given that any privacy concerns are adequately addressed through the agreed protective order. Accordingly, the Motion is granted as to the issue of production of tax returns.

### Award of Expenses

Federal Rule of Civil Procedure 37(a)(5)(A) states that if a motion to compel is granted, or if disclosure or discovery is provided after filing, the court must require the party whose conduct necessitated the motion to pay the moving party's reasonable expenses, including attorney's fees. However, the court must not order this payment if, among other things, "the opposing party's

12

nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(ii), (iii).

The relevant facts regarding an award of expenses are: (1) Plaintiffs' lackadaisical approach to discovery resulted in OPG having to file another motion to compel to secure their compliance on a number of issues that ultimately were resolved by agreement, but only *following* OPG's filing of the Motion; and (2) as to the two unresolved discovery issues, OPG won one and lost one. Since Plaintiffs prevailed on the issue of "individualized" interrogatory responses, OPG is not entitled to fees related to bringing the Motion on that issue. And while OPG prevailed on the tax return issue, the Court finds that Plaintiffs' objection was "substantially justified," notwithstanding that the Court ultimately took OPG's side of the argument. That leaves the discovery issues that were resolved by agreement following OPG's filing of the Motion as the only basis for a fee award. The Court finds that the "other circumstances" exception to a mandatory fee award applies on those issues. Plaintiffs' counsel plainly has had trouble with certain Plaintiffs failing to communicate about the case, and not responding to their discovery duties. *See* (Doc. 197 (Joint Motion To Issue Order To Show Cause)). The non-communicative Plaintiffs have already been penalized by the agreement to dismiss those Plaintiffs' claims. The Court sees no reason to impose a further penalty, the burden of which could fall on counsel, unless counsel participated in or encouraged their clients' failings. There has been no showing that Plaintiffs' counsel has done either of those things. Accordingly, OPG's request for expenses, including attorney's fees, is denied.

## Conclusion

For the foregoing reasons, OPG's Second Motion to Compel and to Determine Sufficiency, **Doc. 190**, is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE**, as set

forth above. Each individual Plaintiff whose claims are still being litigated and who has been served with a request by OPG for the production of federal and state income tax returns for the tax years 2019 through 2022 shall produce complete copies of said tax returns on or before **June 12, 2026**. This deadline should give Plaintiffs' counsel sufficient time to gather the returns from their clients, even though some may be working away from home in the oil field. But if additional time is needed, Plaintiffs' counsel must produce all tax returns received by that date, and contact Defendant's counsel by the deadline to propose a specific date by which the missing tax returns will be produced. Production of tax returns shall be made subject to the Agreed Protective Order (Doc. 172), and if any party later seeks to file a return on the docket, or disclose confidential information found in the returns in any filed document, that party must obtain an order sealing the document, and/or file an unsealed redacted version of the document if possible.

IT IS SO ORDERED this 20th day of May, 2026.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

14